MAYLE, J.
{¶ 1} Appellant, Malinda Sommers, appeals the November 16, 2016 judgment of the Erie County Court of Common Pleas denying her motion for summary judgment, granting the motion for summary judgment of appellee, Perkins Local Schools Board of Education ("the board"), and dismissing her petition for a writ of mandamus. After a careful review of the record, we affirm the trial court's judgment.
I. Background
{¶ 2} Sommers is a teacher who worked at Perkins Local Schools ("Perkins Schools") from the 2006-2007 school year through the 2012-2013 school year on successive limited contracts. Sommers's employment was governed by the Revised Code and a collective bargaining agreement ("CBA") between the board and the Perkins Education Association ("the PEA"), the union that represents teachers employed by Perkins Schools.
{¶ 3} This dispute centers on whether Sommers had a clear legal right to a continuing contract as of April 2013 when the board voted not to renew her limited contract and terminated her employment with Perkins Schools. Sommers, with the PEA's assistance, lodged a grievance against Perkins Schools, claiming that she has a right to a continuing contract. Sommers's grievance *1120 advanced through Level Three of the CBA's grievance procedure, where it was denied by the board. Sommers then requested that the PEA advance her grievance to Level Four, which is arbitration. The PEA voted not to advance Sommers's grievance to arbitration.
{¶ 4} Instead of initiating arbitration without the PEA's support, Sommers filed suit in the Erie County Court of Common Pleas. She requested a writ of mandamus ordering the board to issue her a continuing contract beginning with the 2011-2012 school year. Both parties filed motions for summary judgment. The trial court denied Sommers's motion and granted summary judgment in favor of Perkins Schools. The trial court found that Sommers has a clear legal right to a continuing contract under R.C. 3319.11, and that the board has a corresponding clear legal duty to issue a continuing contract to Sommers, but ultimately concluded that she was not entitled to mandamus relief because she had an adequate remedy at law. The trial court reasoned that Sommers failed to exhaust her remedies under the CBA when she did not pursue a Level Four arbitration without the PEA's support and assistance.
{¶ 5} As discussed further below, we affirm the trial court's judgment, although we affirm for a different reason. "A judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." Bonner v. Bonner , 3d Dist. Union No. 14-05-26, 2005-Ohio-6173, 2005 WL 3111940, ¶ 18. We find that Sommers did not have a clear legal right to a continuing contract for the 2011-2012 or 2012-2013 school years, and Sommers is not entitled to mandamus relief as a matter of law. The trial court therefore reached the right result when it granted summary judgment to Perkins Schools.
II. Facts
{¶ 6} Under Ohio law, there are generally two types of employment contracts for teachers: "limited contracts" and "continuing contracts." R.C. 3319.08(A). Limited contracts are for a set term, not to exceed five years. R.C. 3319.08(C)(3). Continuing contracts (sometimes referred to as tenure) are awarded to teachers who meet certain eligibility requirements, and remain in effect until the teacher resigns, retires, is suspended, or is terminated. R.C. 3319.08(D).
{¶ 7} Sommers began working as a Perkins Schools teacher in the 2006-2007 school year, and taught on consecutive limited contracts after that. Her most recent limited contract was issued on April 14, 2010. At that time, the board issued Sommers a three-year limited contract that employed her for the 2010-2011, 2011-2012, and 2012-2013 school years.
A. Request for Continuing Contract for 2011-2012 School Year
{¶ 8} On February 20, 2011[1] , in the midst of the first year of her limited contract, Sommers sent the Perkins Schools superintendent a written request for a continuing contract for the 2011-2012 school year. Perkins Schools does not dispute that Sommers had met the general statutory eligibility requirements for a continuing contract under R.C. 3319.08(D) and 3319.11(B) by the time she made this first request.
{¶ 9} On February 22, 2011, the superintendent informed Sommers that the board could not consider Sommers's request because *1121 she failed to submit her request before October 15, 2010, as specified in section 6.01(F) of the CBA (stating that the request must be made "no later than October 15 of any year [the teacher] may be eligible for a continuing contract."). He stated, "Unfortunately, we are not able to honor your request for consideration of a continuing contract for next year due to your request being significantly after the deadline."
{¶ 10} In response, Sommers asked the superintendent to consider her request "as significantly early" for the next school year. The superintendent agreed to keep Sommers's request for continuing contract for the "next school year."
B. Request for Continuing Contract for 2012-2013 School Year
{¶ 11} On October 6, 2011, Perkins Schools confirmed in writing that Sommers was among the Perkins Schools teachers who were seeking a continuing contract for the 2012-2013 school year.
{¶ 12} On December 2, 2011, the principal of the school in which Sommers taught sent her a letter addressing areas of professional concern that he said "will have to be addressed in order for me to consider you for a continuing contract."
{¶ 13} Neither the superintendent nor the board took any action on Sommers's request for continuing contract for the 2012-2013 school year.
C. Request for Continuing Contract for 2013-2014 School Year
{¶ 14} On October 8, 2012, Sommers submitted yet another request for a continuing contract, this time beginning with the 2013-2014 school year.
{¶ 15} On March 20, 2013, the Perkins Schools superintendent recommended that the board not renew Sommers's limited contract. The board accepted this recommendation and on April 29, 2013, voted to not renew Sommers's limited contract and terminated her employment with Perkins Schools. On April 30, 2013, the board sent Sommers written notification of its decision to terminate her employment.
D. Grievance Against Perkins Schools
{¶ 16} The PEA, on Sommers's behalf, filed a grievance with the board. The grievance proceeded through the first three levels of the CBA's grievance procedure; the board denied the grievance at each level. Level Four of the CBA grievance procedure is arbitration. Section 4.07(A) of the CBA states, "If the aggrieved person and the Association are not satisfied with the disposition in Level Three, he/she may demand that the issue be submitted to arbitration within five (5) work days after the Level Three hearing."
{¶ 17} The PEA voted not to advance Sommers's grievance to Level Four, and Sommers did not attempt to arbitrate her dispute with the board after the PEA refused to proceed.
E. Mandamus Action
{¶ 18} On June 6, 2014, Sommers filed the underlying mandamus action, alleging that she was entitled to a writ of mandamus that orders the board to issue her a continuing contract beginning with either the 2011-2012 or 2012-2013 school year. Sommers and the board each filed a motion for summary judgment on March 27, 2015. On November 16, 2016, the trial court granted the board's motion for summary judgment, denied Sommers's motion for summary judgment, and dismissed Sommers's petition for a writ of mandamus.
{¶ 19} The trial court interpreted R.C. 3319.11 to mean that when an eligible teacher makes a timely request for a continuing contract, the teacher is automatically reemployed under a continuing contract if the school superintendent and *1122 board fail to act on the teacher's request. The trial court then concluded that Perkins Schools had a clear legal duty to employ Sommers under a continuing contract for the 2011-2012 school year because the board and superintendent did not act on her request. The trial court ultimately concluded, however, that Sommers was not entitled to mandamus relief because she had an adequate remedy at law by following the grievance procedure in the CBA. That is, Sommers failed to exhaust her remedies under the CBA when she did not pursue arbitration without her union's support.
{¶ 20} Sommers now appeals the trial court's decision and sets forth two assignments of error.
Assignment of Error No. 1: The Trial Court erred when it held that Ms. Sommers failed to exhaust the grievance and arbitration procedure under the collective bargaining agreement.
Assignment of Error No. 2: The Trial Court erred when it held that Ms. Sommers was required to exhaust the grievance and arbitration procedure under the collective bargaining agreement.
III. Standard of Review
{¶ 21} An appellate court reviews summary judgment de novo, employing the same standard as the trial court. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996) ; Lorain Natl. Bank v. Saratoga Apts., 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The court can grant a motion for summary judgment only when the moving party demonstrates:
(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. , 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978) ; Civ.R. 56(C).
{¶ 22} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt , 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996) ; Mitseff v. Wheeler , 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E) ; Riley v. Montgomery , 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. , 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999) ; Needham v. Provident Bank , 110 Ohio App.3d 817, 827, 675 N.E.2d 514 (8th Dist.1996), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
IV. Law and Analysis
{¶ 23} The trial court granted summary judgment to Perkins Schools, finding that Sommers could not satisfy the third requirement for a writ of mandamus. A person seeking a writ of mandamus must establish three separate elements by clear and convincing evidence: (1) the relator has a clear legal right to the requested *1123 relief, (2) the opposing party has a clear legal duty to provide the relief, and (3) the relator lacks an adequate remedy in the ordinary course of the law. State ex rel. Manley v. Walsh , 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 18, citing State ex rel. Waters v. Spaeth , 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, and State ex rel. Cleveland Right to Life v. State Controlling Bd., 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.3d 185, ¶ 2.
{¶ 24} The trial court found that Sommers established the first two requirements: it ruled that she had a clear legal right to a continuing contract, and that Perkins Schools had a corresponding clear legal duty to issue a continuing contract. The court determined that R.C. 3319.11 provides that when an eligible teacher makes a request for a continuing contract, the teacher is automatically reemployed under a continuing contract if the school superintendent and board fail to act on the teacher's request as outlined in the statute. The trial court ultimately concluded, however, that Sommers failed to establish the third element, lack of an adequate remedy at law, because she failed to exhaust the CBA's grievance procedure. On appeal, Sommers argues that this was error. She contends that she was not required to exhaust the grievance procedures in the CBA but, if she was, she exhausted those procedures.
{¶ 25} In response, the board counters that the trial court correctly found that Sommers was required to exhaust her administrative remedies and that she failed to do so. The board also argues that the trial court's judgment should be affirmed for a different reason: Sommers does not have a legal right to a continuing contract under either R.C. 3319.11 or the CBA as a matter of law. The board argues that the trial court misinterpreted the various provisions of the CBA and R.C. 3319.11 when it concluded that Sommers has an automatic right to a continuing contract under the circumstances of this case. Essentially, the board argues that the trial court reached the right result, but for the wrong reason.
{¶ 26} An appellate court has jurisdiction to review, affirm, modify, set aside, or reverse lower court judgments that are based on the lower court's commission of prejudicial errors. R.C. 2501.02. An appellate court cannot, however, reverse a lower court decision that is legally correct even if it is a result of erroneous reasoning. City of Toledo v. Schmiedebusch , 192 Ohio App.3d 402, 2011-Ohio-284, 949 N.E.2d 504, ¶ 37 (6th Dist.), citing Reynolds v. Budzik , 134 Ohio App.3d 844, 846, 732 N.E.2d 485 (6th Dist.1999), fn. 3. That is, this court will not reverse a trial court decision that "achieves the right result for the wrong reason, because such an error is not prejudicial." Id.
{¶ 27} Sommers argues, however, that we cannot review the trial court's decision that she has a clear legal right to a continuing contract for two reasons: (1) the board did not file a cross appeal and (2) the board's arguments on this issue are unrelated to Sommers's assignments of error, which are narrowly focused on whether Sommers exhausted her remedies under the CBA's grievance procedure.
{¶ 28} Sommers ignores App.R. 3, which states that a notice of cross-appeal is required only where a party "seeks to change the judgment or order." App.R. 3(C)(1). Indeed, the rule specifically states that "[a] person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error."
*1124 App.R. 3(C)(2). Moreover, "a party seeking to defend a judgment on a ground other than that relied on by the trial court need not file a cross-assignment of error to do so; instead, that party may simply raise the arguments in the appellate brief." 2013 Staff Note, App.R. 3. See Rengel v. Valley Forge Ins. Co. , 6th Dist. Ottawa No. OT-03-045, 2004-Ohio-5248, 2004 WL 2334254 ; Krause v. Spartan Stores, Inc. , 158 Ohio App.3d 304, 2004-Ohio-4365, 815 N.E.2d 696 (6th Dist.).
{¶ 29} In its appellate brief, the board argues that the trial court's ruling should be affirmed because Sommers had no clear legal right to a continuing contract under the governing statute. Thus, the board does not seek to change the trial court judgment. Instead, the board is defending the judgment on a ground that the trial court considered, but did not rely upon, as a basis to dismiss Sommers's mandamus action. The board's argument relating to the first element of mandamus relief-whether Sommers had a clear legal right to a continuing contract-is therefore properly before us under App.R. 3.
{¶ 30} After a review of the record and the governing provisions of R.C. 3319.11 and the CBA, we agree with the board: the trial court reached the right result, but for the wrong reason. As explained below, we find that Sommers does not have a right to a continuing contract for the 2011-2012 or 2012-2013 school years. Because Sommers cannot demonstrate the first two requirements for a writ of mandamus (i.e., a clear legal right and corresponding clear legal duty on the part of the board), she is not entitled to mandamus relief.
A. Request for Continuing Contract for the 2011-2012 School Year
{¶ 31} Sommers requested a continuing contract for the 2011-2012 school year on February 20, 2011, but the board refused to consider it. The board argues that it was not required to act on this request for two reasons: (1) Sommers made this request during the first year of her three-year limited contract and she could not unilaterally change her status until her limited contract expired, citing State ex rel. Paul v. Bd. of Edn. , 44 Ohio St.2d 5, 335 N.E.2d 703 (1975), and (2) Sommers failed to make her request by October 15, 2010, as required by the CBA.
{¶ 32} The board is correct that a teacher in the midst of a multi-year limited contract cannot "unilaterally" change her contract status until the limited contract expires. Paul at 6-7, 335 N.E.2d 703 ; Allen v. Bd. of Edn. , 4th Dist. Scioto No. 1279, 1981 WL 5926, 2 (May 8, 1981). In Paul , a teacher who was previously employed under a continuing contract with another school board entered into a three-year limited contract with a new school board. At the conclusion of the three-year period, the employing board of education chose not to reemploy the teacher. The teacher filed a mandamus action arguing that he was entitled to a continuing contract as a matter of law because, under R.C. 3319.11, he became eligible for a continuing contract after two years of employment with the new school board because he had been previously employed under a continuing contract somewhere else. The teacher had not, however, requested a continuing contract upon reaching eligibility during the term of his limited contract. The Supreme Court of Ohio found that the teacher did not have a right to "automatic tenure" simply because he became eligible for a continuing contract under R.C. 3319.11 during the term of his limited contract. Paul at 6-7, 335 N.E.2d 703.
{¶ 33} We interpret Paul to mean that where a teacher becomes eligible for a continuing contract during the term of a limited contract, there must be some affirmative *1125 action by the teacher to put the superintendent and school board on notice that he or she has become eligible and would like to be considered for a continuing contract. Thus, contrary to the board's arguments, Sommers did not attempt to "unilaterally" change her contract status during the term of her limited contract. Rather, on February 20, 2011, she took affirmative action to put the superintendent on notice that she had become eligible for a continuing contract starting the following school year, 2011-2012. If Sommers was indeed eligible for a continuing contract as of that date, it was incumbent upon the superintendent and board to act on her request under R.C. 3319.11.
{¶ 34} Notably, the parties do not dispute that Sommers was, in fact, statutorily eligible for a continuing contract as of February 20, 2011, because she had met the following requirements: (1) Sommers was issued a five-year professional license on May 21, 2010; (2) Sommers completed the requisite 30 semester hours of coursework in areas related to her field since initially receiving her teaching license; and (3) Sommers had taught at Perkins Schools for three of the last five years.[2] R.C. 3319.08(D) ; R.C. 3319.11(B). The board argues that Sommers was nonetheless ineligible for a continuing contract for the 2011-2012 school year because she failed to make her request by October 15, 2010, as required by Section 6.01(F) of the CBA. We agree.
{¶ 35} Section 6.01(F) of the CBA states, in full:
To be eligible for consideration for continuing contract, a teacher must have notified and/or filed a valid professional, permanent or life certificate or professional license with the Local Superintendent on or before April 15. A bargaining unit member must notify the Superintendent no later than October 15 of any year he/she may be eligible for a continuing contract. Upon receipt of a professional or permanent certificate or professional license on the date specified above, the teacher's multi-year limited contract shall be considered as having an expiration date of the end of the school year in which the request was made. Such member shall be treated as having the same status as any other teacher eligible under this article and this negotiated agreement.
{¶ 36} In a nutshell, Section 6.01(F) of the CBA provides the procedural mechanics and relevant deadlines for teachers and other "bargaining unit members" (i.e., guidance counselors, librarians, and department heads) who wish to be considered for a continuing contract, including teachers employed under multi-year limited *1126 contracts. That is, all bargaining unit members must notify the Superintendent of their eligibility no later than October 15 of any year[3] they may be eligible, and teachers must also file their license with the Superintendent (or notify the Superintendent that they have the required licensure) by April 15. If an eligible teacher who is in the midst of a multi-year limited contract meets these deadlines, then the limited contract is expressly deemed to have expired at "the end of the school year in which the request was made" and the teacher is treated the same as any other eligible teacher who makes a timely request for continuing contract.
{¶ 37} Because Sommers did not submit her request to the superintendent until February 20, 2011, Sommers did not meet the October 15, 2010 deadline for the 2011-2012 school year.[4] In her summary judgment briefing, Sommers argued that the October 15 deadline should not be enforced because Section 6.01(F) is not specific enough to preempt her statutory right to a continuing contract under R.C. 3319.11.
{¶ 38} Sommers recognizes, however, that if there is any conflict between Section 6.01(F) and R.C. 3319.11, the conflict must be resolved according to R.C. 4117.10(A). Under R.C. 4117.10(A), any "terms and conditions of public employment" that are specified in a collective bargaining agreement prevail over conflicting state or local law. Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn. , 68 Ohio St.3d 288, 291, 626 N.E.2d 110 (1994). Moreover, "[p]rovisions defining eligibility for tenure are clearly 'terms and conditions' of employment within the meaning of R.C. 4117.10(A)." Rollins , 40 Ohio St.3d 123, 125, 532 N.E.2d 1289. In Rollins , the Supreme Court of Ohio expressly found that the eligibility requirements for continuing-service status, as stated in the Ohio Revised Code, can be increased by a collective bargaining agreement because they are "terms and conditions of public employment" under R.C. 4117.10(A). Id. at 128, 532 N.E.2d 1289 (enforcing a contractual provision that required teachers to receive a principal's recommendation to be eligible for a continuing contract).
{¶ 39} Sommers maintains that even under R.C. 4117.10(A), any "terms and conditions of employment" contained in a collective bargaining agreement must be specific, and Section 6.01(F)'s notification deadlines are not specific enough to be enforced. See R.C. 4117.10(A) ("Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees." (Emphasis added.)). She relies upon State ex rel. Ohio Assn. of Pub. School Emps. v. Batavia Local School Dist. Bd. of Edn. , 89 Ohio St.3d 191, 729 N.E.2d 743 (2000), in which the Supreme Court held that "[i]n order to negate statutory rights of public employees, a collective bargaining agreement must use language with such *1127 specificity as to explicitly demonstrate that the intent of the parties was to preempt statutory rights." Id. at syllabus.
{¶ 40} Sommers claims that her case is indistinguishable from State ex rel. Yobe v. Ravenna City School Dist. Bd. of Edn. , 11th Dist. Portage No. 2001-P-0085, 2002 WL 255494 (Feb. 22, 2002), a case in which the Eleventh District relied upon Batavia when it refused to enforce a similar notification deadline in a collective bargaining agreement that read: "In a year in which a teacher is or may become eligible for a continuing contract that teacher must notify the building administrator in writing by September 30 * * *." Id. at 3. The Eleventh District determined that the language of that agreement was not specific enough to be enforceable, stating that "in the absence of any specific language stating that the failure to give timely notice would affect a teacher's eligibility for such a contract, the language does not demonstrate the intent to waive the [teacher's] statutory right * * *." Id. at 4.
{¶ 41} We find that the contractual language analyzed in Yobe is distinguishable from the language of the CBA in this case. It is important to remember that the language of the CBA must be read as a whole and harmonized to give effect to every word. German Fire Ins. v. Roost , 55 Ohio St. 581, 587, 45 N.E. 1097 (1897) ; Reams v. Reams , 6th Dist. Lucas Nos. L-04-1329 and L-04-1276, 2005-Ohio-5264, 2005 WL 2415936, ¶ 22. Notably, the very first line of section 6.01(F) specifically states, "To be eligible for consideration for continuing contract * * *," which clearly means that the parties intended Section 6.01(F) to affect a teacher's eligibility for a continuing contract. Thus, unlike the agreement at issue in Yobe , this contractual language "explicitly demonstrate[s] * * * the intent of the parties" to increase the eligibility requirements for continuing contracts with Perkins Schools. Batavia at syllabus; Rollins at 128, 532 N.E.2d 1289 (eligibility requirements may be increased by collective bargaining agreements).
{¶ 42} Moreover, the clause of Section 6.01(F) that allows early termination of a teacher's multi-year limited contract states: "the teacher's multi-year limited contract shall be considered as having an expiration date of the end of the school year in which the request was made." (Emphasis added.) Again, interpreting the CBA as a whole and giving meaning to all of its parts, "the request" necessarily refers to the immediately-preceding sentence of Section 6.01(F), which provides that the "bargaining unit member must notify the Superintendent no later than October 15 of any year he/she may be eligible for a continuing contract." (Emphasis added.) "[T]he word 'must' is mandatory. It creates an obligation. It means obliged, required, and imposes a physical or moral necessity." Wilson v. Lawrence , Slip Opinion No. 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 13, quoting Willis v. Seeley , 68 N.E.2d 484, 485 (C.P.1946). Sommers simply cannot enforce the early-termination clause of Section 6.01(F) while simultaneously avoiding the mandatory deadline for the specific "request" that triggers Sommers's right to early termination.
{¶ 43} In sum, we find that the language of Section 6.01(F) explicitly demonstrates the parties' intent to affect the eligibility requirements for a continuing contract. Batavia at syllabus. Moreover, to the extent that there is any conflict between Section 6.01(F) and R.C. 3319.11, we must give effect to the mandatory notification deadlines of that provision under R.C. 4117.10(A) and Rollins . Accordingly, in order to become eligible under the CBA for a continuing contract for the 2011-2012 school year, Sommers was required to notify *1128 the superintendent by October 15, 2010. As Sommers did not submit her request until February 20, 2011, her request was untimely and the board was not required to act on it.
B. Request for Continuing Contract for the 2012-2013 School Year
{¶ 44} By email dated February 22, 2011, the Perkins Schools superintendent agreed to consider Sommers's February 20, 2011 request for continuing contract "as significantly early for the next school year"-i.e., the 2011-2012 school year (making it a request for a continuing contract starting the following school year, 2012-2013). On October 6, 2011, Perkins Schools confirmed in writing that Sommers was among the Perkins Schools teachers who were seeking consideration for a continuing contract for the 2012-2013 school year.
{¶ 45} Thus, Sommers timely notified the superintendent by October 15, 2011, that she was requesting a continuing contract for the 2012-2013 school year. In addition, Sommers's request for continuing contract included a written notification that she had been issued a five-year professional license on May 21, 2010. Accordingly, Sommers timely requested a continuing contract for the 2012-2013 school year because she met both deadlines (October 15, 2011, for notification of eligibility and April 15, 2012, for filing/notification of professional license) as stated in Section 6.01(F) of the CBA.
{¶ 46} Moreover, her timely request terminated her limited contract and the limited contract was deemed expired as of "the end of the school year in which the request was made." Section 6.01(F). Although Sommers submitted her request on February 20, 2011, i.e., during the 2010-2011 school year, she specifically asked the superintendent "to think of this [request] as significantly early," and the superintendent agreed to "keep you [sic] request for continuing contract for next year." Consequently, by agreement of the parties, "the school year in which the request was made" was the "next year," i.e., the 2011-2012 school year.
{¶ 47} We therefore find that Sommers made a timely request during the 2011-2012 school year for a continuing contract beginning in the 2012-2013 school year, her limited contract expired at the end of the 2011-2012 school year, and, under Section 6.01(F), Perkins Schools was required to "treat [her] as having the same status as any other teacher" eligible for a continuing contract under R.C. 3319.11.
{¶ 48} Under R.C. 3319.11, the superintendent must make a recommendation to the board of education that a teacher eligible for continuing status "be reemployed" or "not be reemployed." R.C. 3319.11(B)(1), (2). The board is then required to act on the superintendent's recommendation, and if the board votes not to reemploy the teacher, it must provide written notice to the teacher "on or before the first day of June * * *."[5] R.C. 3319.11(B)(1) and (2). The version of R.C. 3319.11 that was in effect during the 2011-2012 school year, however, required such written notice to be provided "on or before the thirtieth day of April * * *."[6] Thus, for purposes of our analysis, we refer to April 30 deadline of the prior version of R.C. 3319.11.
{¶ 49} Here, despite Sommers's timely request for a continuing contract during the 2011-2012 school year, the superintendent did not make any recommendation to the board regarding Sommers's eligibility *1129 for continuing contract, and the board failed to take any action. Because the superintendent made no recommendation and the board did not act, Sommers argues that she acquired a continuing contract by operation of law under R.C. 3319.11(F) which states:
The failure of a superintendent to make a recommendation to the board under any of the conditions set forth in divisions (B) to (E) of this section, or the failure of the board to give such teacher a written notice pursuant to divisions (C) to (E) of this section shall not prejudice or prevent a teacher from being deemed reemployed under either a limited or continuing contract as the case may be under the provisions of this section. A failure of the parties to execute a written contract shall not void any automatic reemployment provisions of this section.
{¶ 50} The trial court agreed with Sommers's interpretation of R.C. 3319.11(F), but we disagree. Revised Code 3319.11(F) does not provide a standalone right to be reemployed under a continuing contract whenever the superintendent and board fail to act on a teacher's eligibility for continuing contract. Rather, R.C. 3319.11(F) expressly provides that the failure of the superintendent to make a recommendation, or the failure of the board to provide written notice of a decision not to reemploy the teacher, "shall not prejudice or prevent a teacher from being deemed reemployed under a limited or continuing contract as the case may be under the provisions of this section. " (Emphasis added.) Thus, we must look at the other "provisions of [ R.C. 3319.11 ]" to determine whether Sommers was "deemed reemployed" under a limited or continuing contract, "as the case may be."
{¶ 51} Under R.C. 3319.11, with two exceptions discussed below, if the superintendent and board fail to follow the required process and do not meet the mandatory notification deadline, an eligible teacher is "deemed reemployed under an extended limited contract." An "extended limited contract" is a limited contract that a board enters into with a teacher who is eligible for continuing-contract status. R.C. 3319.11(A)(3). The statute expressly provides that, whether the superintendent initially recommends that the eligible teacher "be reemployed" or "not be reemployed," if the board ultimately votes to not reemploy the teacher and then fails to give written notice before April 30 of its intention not to reemploy the teacher or fails to follow the evaluation procedures of R.C. 3319.111, then "the teacher is deemed reemployed under an extended limited contract for a term not to exceed one year * * *." R.C. 3319.11(B)(1), (B)(2), (C)(3).
{¶ 52} Revised Code 3319.11 does, however, provide that an eligible teacher has a right to be "deemed reemployed under a continuing contract" in two different situations.
{¶ 53} First, if an eligible teacher is currently employed under an "extended limited contract pursuant to division (B) or (C) of [ R.C. 3319.11 ]"-for example, the teacher was previously "deemed reemployed" under an extended limited contract due to the failure of the superintendent or board to follow the statutory evaluation process or meet the April 30 notification deadline-and the board intends to not reemploy the teacher but, once again, fails to meet the April 30 notification deadline or fails to follow the statutory evaluation procedures, then the eligible teacher is "deemed reemployed under a continuing contract." R.C. 3319.11(D).
{¶ 54} The second situation is a bit more complicated. If a superintendent recommends an eligible teacher for reemployment under a continuing contract and the *1130 board votes to reject that recommendation, the statute allows the superintendent to make a new recommendation that the teacher be rehired under an extended limited contract for a term not to exceed two years. R.C. 3319.11(C)(1). If the board rejects the new recommendation by a three-fourths majority vote, but fails to give notice of that decision by April 30, then the teacher is "deemed reemployed under an extended limited contract." R.C. 3319.11(C)(3). But, if the board either accepts this new recommendation or fails to reject the new recommendation by a three-fourths majority vote, and then fails to give written notice to the teacher of its "affirmative action" on the superintendent's new recommendation before April 30, then the teacher is "deemed reemployed under a continuing contract." R.C. 3319.11(C)(2).
{¶ 55} Considering the express situations in which an eligible teacher is "deemed reemployed under a limited or continuing contract as the case may be under the provisions of [ R.C. 3319.11 ]" as we must under R.C. 3319.11(F), it is clear that Sommers was "deemed reemployed under an extended limited contract"-not a continuing contract-under R.C. 3319.11(B) when the superintendent and board failed to act on Sommers's eligibility before April 30, 2011. None of the express situations in which a teacher is "deemed reemployed under a continuing contract," as discussed above, apply. Rather, under the plain terms of both R.C. 3319.11(B)(1) and (2), an eligible teacher who fails to receive the statutorily-required action of the superintendent and board by April 30 receives an extended limited contract by operation of law.
{¶ 56} Moreover, it makes sense that R.C. 3319.11(B)(1) and (2) provide the same default remedy in this situation given that the superintendent failed "to make a recommendation." (Emphasis added.) R.C. 3319.11(F). That is, the superintendent did not make a recommendation one way or the other-the superintendent did not recommend reemployment under R.C. 3319.11(B)(1), but the superintendent also did not recommend against reemployment under R.C. 3319.11(B)(2). While Sommers argues that we should assume that the recommendation would have been for reemployment, R.C. 3319.11(F) specifies that Sommers cannot be "prejudice[d]" by the superintendent and board's failure to take required actions-in other words, she does not receive any greater rights than other eligible teachers under the same "automatic reemployment provisions" that are referenced in R.C. 3319.11(F).
{¶ 57} In sum, under Section 6.01(F) of the CBA, Sommers terminated her three-year limited contract upon her timely request for continuing contract during the 2011-2012 school year. Because the superintendent and board then failed to take the required statutory action under R.C. 3319.11, she received an extended limited contract for the 2012-2013 school year by operation of law.
{¶ 58} Notably, if the superintendent and board failed to take the required action during the 2012-2013 school year, then she would have been "deemed reemployed under a continuing contract" pursuant to R.C. 3319.11(D). But Perkins Schools followed the proper procedure that year: the superintendent recommended that the board not renew Sommers's limited contract, and on April 29, 2013, the board voted to not renew Sommers's limited contract and terminated her employment with Perkins Schools by written notification on April 30, 2013.
V. Conclusion
{¶ 59} Based on the record before us, Sommers does not have a clear legal right to a continuing contract for either the *1131 2011-2012 or 2012-2013 school year as she alleges. She therefore does not have a right to mandamus relief, and we need not address the issue of whether she had an adequate remedy at law.
{¶ 60} Appellant's first and second assignments of error are found not well-taken.
{¶ 61} Accordingly, we find that the trial court correctly granted summary judgment to the board and denied Sommers a writ of mandamus. The November 16, 2016 judgment of the Erie County Court of Common Pleas is affirmed. Sommers is ordered to pay the costs of this appeal pursuant to App.R. 24.
Judgment affirmed.
James D. Jensen, P.J.
Thomas J. Osowik, J.
CONCUR.

Sommers emailed the superintendent on February 20, 2011; the letter she attached to the email is dated February 14, 2011. Although the parties and the trial court refer to Sommers's February 14, 2011 request, the record reflects that Sommers made her request on February 20, 2011, when she emailed the superintendent.

The parties do, however, dispute whether Sommers was statutorily eligible for a continuing contract as of April 14, 2010, when she entered her three-year limited contract. But that dispute is irrelevant for two reasons. First and most importantly, Sommers does not claim that she should have received a continuing contract beginning with the 2010-2011 school year instead of the three-year limited contract that she received. Rather, Sommers seeks an order of mandamus compelling Perkins Schools to issue a continuing contract "effective beginning the 2011-2012 school year"-which necessarily concedes that her limited contract beginning in 2010-2011 was properly issued by the board, and makes her eligibility for a continuing contract on April 14, 2010, irrelevant. Second, even if we assume that Sommers had met the statutory eligibility requirements by April 14, 2010, it is clear that Sommers had not met the additional eligibility requirements of CBA Section 6.01(F) by that date-i.e., she did not request a continuing contract by October 15, 2009, and she did not notify the superintendent of her professional license by April 15, 2010. State ex rel. Rollins v. Bd. of Edn. , 40 Ohio St.3d 123, 532 N.E.2d 1289 (1988) ; R.C. 4117.10(A).

Consistent with both parties' interpretations, the relevant "year" is the school year in which the eligible bargaining member makes his or her request for a continuing contract to begin the following school year. For example, because Sommers made her first request during the 2010-2011 school year, the relevant deadlines were October 15, 2010, and April 15, 2011, under Section 6.01(F).

Although she missed the October 15, 2010 deadline for her request, she met the April 15, 2011 deadline because she notified the Superintendent in her February 20, 2011 email that she had been issued a five-year professional license on May 21, 2010.

2012 Am.Sub.S.B. 316, effective Sept. 24, 2012.

2011 Am.Sub.H.B. 153, effective Sept. 29, 2011.