[Cite as *Freelon v. GRG Farms, Inc.*, 2024-Ohio-4764.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Suzanna Freelon, As a Director of
GRG Farms, Inc. and as Successor
Trustee of the Homer Ray Roof
Revocable Living Trust

        Appellee

v.

GRG Farms, Inc. et al.

        Appellants

Court of Appeals No.  H-23-022

Trial Court No. CVH 2021 765

**<u>DECISION AND JUDGMENT</u>**

Decided:  September 30, 2024

* * * * *

Eric T. Michener and Gage T. Righter, for appellee.

Thomas L. Anastos for appellants.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellants, GRG Farms, Inc. and Norman Gannett, appeal the July 7, 2023 judgment of the Huron County Court of Common Pleas granting summary judgment in favor of Suzanna Freelon, as Director of GRG Farms Inc., and as Successor Trustee of the Homer Ray Roof Revocable Living Trust ("Freelon"), on her claim for judicial

dissolution of GRG Farms, Inc.[1] For the following reasons, we affirm the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} The following facts were developed from the parties' depositions, affidavits, discovery responses, and supporting Civ.R. 56 documents.

{¶ 3} In 2004, Gannett and Homer Roof formed GRG Farms, Inc., a beef cattle breeding business. The Huron County, Ohio, business was located on 356-acres of land owned originally owned by Gannet's mother and aunt (the "Gannett Property"). Though the transaction's genesis is unclear, in September 2004, evidenced by a notarized statement, Roof tendered $84,000 to Gannett's mother who, in turn, purchased the remaining property from Gannett's aunt.

{¶ 4} On October 1, 2004, GRG's board of directors, which consisted of Gannett, Roof, and Roof's wife, Louann Schroeder, held an organizational meeting. At the meeting, the board elected Gannett the president of GRG, Roof the vice-president, and Schroeder the secretary and treasurer. That same day, Roof, through the Homer J. Roof

---

[1] Throughout the underlying action and this appeal, Gannett and GRG have made all their filings jointly. We cannot determine, based on the record before us, whether these parties' interests are so aligned that joint filings are appropriate. For example, it is unclear that Gannett would have standing, as a shareholder, to file a declaratory judgment action against Freelon to declare the agreement void or an unjust enrichment claim to recover monies paid to Roof under that allegedly invalid agreement when he was not a party to the agreement. However, we make no findings related to the alignment of Gannett and GRG's interests as that issue was not raised by the parties and because our decision resolves the assigned errors independent of any potential conflicting interests they may have.

2.

Revocable Living Trust, and Gannett were named the sole shareholders, each holding 50 shares of stock as evidenced in the stock and transfer ledger. In exchange for the shares, Gannett promised to transfer the Gannett Property and Roof agreed to transfer one 58-acre parcel (the "Roof Property"). The agreement was ratified by resolution which provided:

> RESOLVED, that acceptance of the offer of the abovenamed stock subscribers is in the best interest of the Corporation and necessary for carrying out the corporate business, and in the judgment of the Board of Directors, the assets proposed to be transferred to the Corporation are reasonably worth the amount of consideration deemed therefor, and the same is hereby accepted, and that upon receipt of the consideration indicated above, the President and the Secretary are authorized to issue certificates of fully-paid, non-assessable capital stocks of this Corporation in the amounts indicated to the abovenamed persons.

{¶ 5} While Gannett transferred the Gannett Property by deed recorded on December 6, 2004, Roof never transferred his parcel. At the time of the stock distribution, the Roof Property was owned by SSU, Inc., of which Roof was president and an owner. Gannett claimed that that he was not aware that the Roof Property had not been transferred at that time.

3.

{¶ 6} Gannett stated that Roof "supported" the startup of GRG by providing 40-50 cows, valued at approximately $400-500 per cow. The pair also used Roof's equipment to clear land and plant fields.

{¶ 7} In 2006, Roof told Gannett that the Roof Property had been sold. Gannett claimed that prior to the sale, he was not aware that GRG was not the owner of the property. Gannett admittedly did not inquire as to the purchaser of the property, the purchase price, or whether the proceeds benefited GRG. He maintained that sometime after Freelon became a director, in approximately 2020, he learned that the Roof Property was never transferred to GRG.

{¶ 8} Gannett denied any oversight of business expenses. He indicated that purchases by GRG were paid with money in the business checking account. He had no knowledge of where the money came from to pay bills or taxes, or who paid them. For example, in 2005, a fence was built on the property with materials Roof purchased at an auction; Gannett did not know the source of the funds. In 2007, a hay barn was constructed on the property at a cost of approximately $58,000. It was paid for through GRG, and Gannett stated that Roof hired the contractors. The company did not have annual meetings, and he and Roof generally conducted business telephonically.

{¶ 9} Gannett stated that GRG was never profitable. The only distributions made to the shareholders were equal payments in 2012, of $22,500 for the sale of timber, and in 2017, of $419,079 for a pipeline easement on the property. GRG's shareholders occasionally split a small profit from custom hay baling.

4.

{¶ 10} GRG's treasurer, Schroeder, provided financial information to the corporation's accountants, who, in turn, generated spreadsheets captioned "Note payable to shareholder" and included running totals of sums contributed by Gannett and Roof and sums owed to Gannett and Roof by GRG, including interest. Monies provided by Roof's company, SSU, were also included. Notably, the information listed values for both the Roof Property, which had never been transferred, and the Gannett Property.

{¶ 11} The federal income tax returns, prepared by the same accounting firm, reflected the listed notes payable to shareholders as the amount represented in the spreadsheets. In 2011, 2014, and 2015, the firm prepared cognovit notes reflecting the amounts owed to Roof and Gannett; they were never executed.

{¶ 12} Gannett was questioned about the income tax returns in years 2012-2018, prepared by the accounting firm, representing that the shareholders, particularly Roof, was owed more than $500,000. Gannett stated that he neither reviewed nor signed tax documents.

{¶ 13} After Roof died in 2019, his wife, Schroeder, was appointed successor trustee of the trust. Following Schroeder's death in 2020, Roof's daughter, Freelon, became the trustee. Gannett consented to Freelon, as successor trustee, being named as a director of GRG. In 2021, Gannett and Freelon entered negotiations for a buyout of Freelon's shares in the company. Negotiations broke down after Gannett was unable to secure financing.

5.

{¶ 14} On September 13, 2021, Freelon commenced this action by filing a verified complaint for dissolution of GRG, pursuant to R.C. 1701.91(A)(4). Freelon, as trustee of the Homer Ray Roof Revocable Trust, alleged that she was a fifty percent shareholder of GRG and that she and equal shareholder, Gannett, were deadlocked on whether to continue operations.

{¶ 15} Appellants jointly filed a counterclaim seeking a declaratory judgment that Freelon, as successor trustee, lacked standing to seek judicial dissolution. They also alleged that the stock shares issued to Roof, as trustee, were void because they were issued without consideration. Thus, trustee Roof never owned the shares purportedly held by the Freelon as successor trustee. Appellants also raised an unjust enrichment claim.

{¶ 16} Freelon filed a motion to dismiss arguing that appellants' counterclaims were barred by the 15-year limitations period in effect in 2004, for breach of a written contract. Relying on R.C. 1701.14, appellants opposed the motion arguing that because the Articles of Incorporation placed no deadline for Roof's performance, Roof or his successors were still obligated to pay the agreed-upon consideration upon the call of the directors. The trial court denied Freelon's motion.

{¶ 17} On December 15, 2022, the parties filed motions for summary judgment on all claims and counterclaims. Freelon's motion argued that she had standing to request dissolution of the company because Roof provided sufficient consideration despite not transferring the agreed-upon property in exchange for his shares. She claimed that the

6.

relevant deposition testimony and tax records demonstrate that Roof's financial contributions of approximately $369,600 through December 5, 2005, exceeded the value of the Roof Property. Freelon further maintained that appellants' declaratory judgment action was barred by the statute of limitations because it was, in essence, a breach of contract claim.

{¶ 18} Conversely, appellants asserted that Freelon is not a shareholder of GRG because by not transferring the Roof Property to GRG, Roof never entered into a unilateral contract with GRG and never acquired the shares. They further argued that pursuant to the subscription agreement in the resolution, GRG was to issue shares to Roof, not Roof in his trustee capacity. Finally, appellants argued that they were entitled to summary judgment on their unjust enrichment claim because Roof wrongfully retained a split of the profit distributions.

{¶ 19} On July 12, 2023, the trial court granted Freelon's motion for summary judgment while denying appellants' motion. The court found that although Roof failed to provide the bargained-for Roof Property, he made "sizeable monetary and in-kind contributions to the business" and that his failure to provide the property did not "effect the parties willingness to treat the business as a 50/50 proposition." The court noted that "equity demands that this Court honor the clear intentions of the parties and treat them as equal co-owners of the business." The court then concluded that Freelon and Gannett, as directors and equal shareholders in GRG, were deadlocked on whether to dissolve the company and granted Freelon's request for judicial dissolution under R.C. 1701.91(A)(4).

7.

### III.  Assignments of Error

**{¶ 20}** Appellants timely appealed and assert the following errors for our review:

1.  The trial court erred by granting Freelon's motion for summary judgment.

2.  The trial court erred by denying [appellants'] motion for summary judgment.

### IV.  Law and Analysis

**{¶ 21}** At the outset, we note that the parties utilized significant portions of their motion practice before the trial court, and their briefs on appeal, to argue whether the contract was bilateral or unilateral and the impact of that distinction.  Freelon argues that the agreement was an express bilateral contract and that Roof's failure to transfer his parcel of land was a breach of that binding contract.  She argues that appellants' counterclaims were barred by the applicable statute of limitations based on the date of Roof's breach.  Appellants argue that the agreement was a unilateral contract that required Roof's performance to ever become binding on the parties.  Since Roof never performed, appellants argue, there was never a binding agreement between the parties, rendering any obligations under the agreement void and vacating Freelon's status as a shareholder with the ability request judicial dissolution of the company.

**{¶ 22}** The trial court did not make a specific finding regarding the nature of the agreement, but determined that Roof's contribution of "sizable monetary and in-kind contributions" to GRG constituted "substantial" consideration for the shares GRG transferred to him.  Ostensibly, the trial court's conclusion could satisfy Roof's payment of consideration under a bilateral contract or constitute performance to accept a unilateral

8.

contract. The ambiguous nature of the trial court's conclusion seemingly places more emphasis on the parties' arguments regarding the bilateral or unilateral nature of the agreement. However, as described below, the initial question guiding this court's analysis is not whether the contract was unilateral or bilateral, but whether the contract was express or implied in fact.

{¶ 23} Ohio recognizes three types of contracts—express, implied in fact, and implied in law. *Bayer v. Nachtrab,* 2014-Ohio-5586, ¶ 26 (6th Dist.). "An express contract is formed when there is mutual assent and consideration." *Larcom v. Larcom,* 2010-Ohio-3632, ¶ 11 (6th Dist.). "In express contracts the assent to [the contract's] terms is actually expressed in offer and acceptance." *Waffen v. Summers,* 2009-Ohio-2940, ¶ 31 (6th Dist.). Conversely, "[i]n contracts implied in fact[,] the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." *Id.* By inferring that the parties entered into an agreement based on the circumstances surrounding their interactions, the trial court concluded that parties' agreement was an implied in fact contract. We disagree with the trial court's conclusion.

{¶ 24} Having reviewed the record, we find that Roof and GRG entered into an express contract. Specifically, Roof offered to transfer a parcel of land he owned to GRG in exchange for GRG's offer to issue him 50 shares in the company. The agreement was reflected in GRG's October 1, 2004 organizational meeting minutes. The actual expression of offer and acceptance is a classic example of an express contract. *Id.* at ¶

9.

31. Therefore, we find that the parties entered into an express agreement on October 1, 2004, and we apply the authority relevant to the parties' arguments considering that as the date the parties became bound by their agreement.

## A. Standard of Review

{¶ 25} Each of appellants' assignments of error challenge the trial court's grant or denial of the parties' cross-motions for summary judgment. An appellate court reviews a trial court's decision to grant summary judgment de novo. *Chalmers v. HCR ManorCare, Inc.*, 2017-Ohio-5678, ¶ 21 (6th Dist.). Summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact," show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). "'[T]he purpose of summary judgment is "not to try issues of fact, but rather to determine whether triable issues of fact exist."'" *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 19, quoting *Smathers v. Glass*, 2022-Ohio-4595, ¶ 3, quoting *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 15 (6th Dist. 1983).

{¶ 26} "The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment." *Wright-Patt Credit Union, Inc. v. Byington*, 2013-Ohio-3963, ¶ 9 (6th Dist.). "[O]nce the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party 'may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that

10.

there is a genuine issue for trial.'" *Id.*, quoting Civ.R. 56(E). "Summary judgment must be awarded with caution because it terminates litigation." *Goodell v. Motorists Mut. Ins. Co.*, 2017-Ohio-8425, ¶ 4 (6th Dist.), citing *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Because it informs our analysis of their first assignment of error, we begin our de novo review with appellants' second assignment of error.

### B. The trial court did not err in denying appellants' motion for summary judgment.

{¶ 27} In their second assignment of error, appellants argue that the trial court erred in denying their motion for summary judgment. In that motion, appellants argued that they were entitled to a declaratory judgment finding that the transfer of shares to the Roof trust was void as a matter of law because Roof never transferred the parcels of land to GRG in accordance with the agreement. Freelon, in opposition, argued that appellants' claim was barred under the statute of limitations applicable to written contracts and under the doctrine of laches. We find each of Freelon's arguments persuasive.

### i. Appellants' declaratory judgment claim is barred by the applicable statute of limitations.

{¶ 28} Appellants' declaratory judgment claim alleges a clear breach of the contract between GRG and Roof. Indeed, Freelon concedes that the bargained-for consideration underlying the agreement—Roof's transfer of parcels to GRG in exchange for the shares—never occurred. While this constitutes a breach of the original agreement, we find that appellants' claim for declaratory judgment is barred by the applicable statute of limitations.

11.

**{¶ 29}** To determine the statute of limitations applicable to a declaratory judgment action, "we look to the underlying nature or subject matter of the claim." *Joseph Brothers Company, LLC v. Dunn Bros., Ltd.,* 2019-Ohio-4821, ¶ 41 (6th Dist.). When a declaratory judgment action "revolves around breach of contract claims," the applicable statute of limitations is the one applicable to that type of claim. *See Ricketts v. Everflow,* 2016-Ohio-4807, ¶ 6 (holding that the statute of limitations applicable to the underlying contract applied to a party's declaratory judgment action when that action sought a declaration of the parties' rights in light of that breach). The record here clearly shows that the subject matter of appellants' claim is, at its most basic terms, a breach of contract action and that the breach of contract statute of limitations is applicable to appellants' declaratory judgment claim.

**{¶ 30}** When GRG and Roof entered into the underlying agreement on October 1, 2004, R.C. 2305.06 established a 15-year statute of limitations for actions arising from a breach of written contracts. R.C. 2305.06 (eff. July 1, 1993). Roof's breach of the agreement occurred on October 1, 2004, when he failed to transfer the parcels of land owed to GRG after it issued him the agreed-upon shares.[2] *See Banner Const. Co. v. Koester,* 2000 WL 331385 (6th Dist. 2000) ("A breach occurs upon the failure to perform

---

[2] In his affidavit attached to appellants' opposition to Freelon's motion for summary judgment, Gannett alleged that he was not aware of Roof's breach until after the underlying action was filed. Gannett's inclusion of the alleged delay in discovering Roof's breach is irrelevant to our statute of limitations analysis as "no Ohio court has ever applied the discovery rule to a claim for a breach of contract." *Taylor-Winfield Corp. v. Huntington Bank,* 2021-Ohio-3480, ¶ 21 (11th Dist.).

12.

a contractual duty"). It is undisputed that Roof failed to perform his obligation upon GRG's transfer of shares to him. As a result, appellant' declaratory judgment action, relating to Roof's breach of contract, had to be filed within fifteen years of Roof's breach—that is, before October 1, 2019.

{¶ 31} Freelon initiated this action on September 13, 2021. Appellants' counterclaim seeking a declaration that the contract was void and unenforceable was filed on December 3, 2021, more than two years after the applicable statute of limitations expired. Even assuming that appellants' counterclaim was a compulsory counterclaim and relates back to that date Freelon filed her complaint, *See National Retailers Mut. Ins. Co. v. Gross,* 142 Ohio St. 132 (1943), that counterclaim would still be deemed filed well after the October 1, 2019 deadline. As a result, we find that appellants' counterclaim was barred by the applicable statute of limitations and their motion for summary judgment on that claim was properly denied.

### ii. Appellants' declaratory judgment action is barred by the doctrine of laches.

{¶ 32} Appellants' declaratory judgment claim was further barred by the doctrine of laches. Laches is "a party's failure to assert a right for an unreasonable and unexplained period of time under circumstances that cause prejudice to the opposing party." *Pollard v. Eiber,* 2018-Ohio-4538, ¶ 30-31 (6th Dist.). While showing that the opposing party delayed in asserting a claim or defense is an element of laches, delay alone is insufficient to succeed on a laches defense. *Id.* Instead, "the party asserting the

13.

defense must also show that [they were] materially prejudiced by the opposing party's delay. Material prejudice exists when the defendant shows (1) the loss of evidence helpful to the defendant's case or (2) a change in the defendant's position that would not have occurred if the plaintiff had asserted [their] rights sooner." *Id.* "Laches is an affirmative defense. In the context of a motion for summary judgment, the party asserting an affirmative defense has the burden of producing sufficient evidence in support of the defense to show the absence of a genuine issue of material fact for trial." *Id.*

{¶ 33} In her opposition to appellants' motion for summary judgment, Freelon argued that appellants' failure to raise their claim that Roof's shares were invalid for more than 17 years—from October 1, 2004 to December 3, 2021—was unreasonable and, if permitted to proceed, would result in prejudice to her. Specifically, she argued that since Roof and another GRG director that was present when the agreement was reached had died before the underlying litigation, that she would be unable to obtain their testimony for use in defending against appellants' counterclaim.

{¶ 34} In their reply, appellants argued (1) that Freelon did not have standing to file her claim because the shares she alleged to control were invalid based on Roof's breach of the original contract, (2) that they could not have challenged the validity of those shares until Freelon filed her complaint, and (3) that they were unaware of Roof's alleged breach until Freelon filed her complaint. Curiously, while these arguments are contained in appellants' reply in support of their own motion for summary judgment, they

14.

frame these arguments as defenses to Freelon's motion for summary judgment. That anomaly notwithstanding, appellants' arguments are without merit. We address their arguments in turn.

{¶ 35} First, appellants' argument that Freelon's shares are invalid acknowledges the prejudice Freelon would suffer should they be permitted to pursue their declaratory judgment action. Specifically, Freelon's change in status from equal shareholder to having no shares in GRG can only be viewed as "a change in [her] position that would not have occurred if [appellants] had asserted [their] rights sooner." *Pollard* at ¶ 30-31. Additionally, appellants' delay in asserting their declaratory judgment action precludes Freelon from obtaining any testimonial evidence from Roof that could defend his status as a shareholder since he died before appellants filed their claim. Therefore, rather than support their own motion for summary judgment, appellants' arguments actually support Freelon's argument that she would suffer prejudice if they are able to raise these issues after remaining silent on their rights for more than 17 years.

{¶ 36} Second, appellants' argument that Freelon's laches argument fails because their attempt to invalidate the Roof shares only came in defense to Freelon initiating this action is wholly unsupported by the record. Appellants' argument ignores that they filed their own claim for a declaratory judgment and that they raised these arguments in a *reply* brief in support of *their own motion for summary judgment* on that claim. Their argument that the declaratory judgment action was merely a defense to Freelon's action does not comport with the facts on record. Further, their reply cites no authority to

support their argument that the declaratory judgment action could not have been filed in the 17 years since Roof failed to transfer the parcels to GRG but only in response to Freelon's complaint. Put simply, appellants' argument that the declaratory judgment action is merely a defense to Freelon's request for dissolution is invalid on its face.

{¶ 37} Finally, appellants' argument that they did not know that Roof never transferred the parcels until after Freelon's complaint is irrelevant to the issue before us and not supported by the record. In their motion for summary judgment, appellants argued that Gannett did not receive a copy of the October 1, 2004 agreement until after Freelon filed her complaint. This fact, even if true, is limited to Gannett's personal knowledge and would not permit GRG as an entity to claim it had no knowledge of the agreement contained in its own corporate records. Additionally, Gannett acknowledged during his deposition that he became aware that Roof's parcels were sold to another entity in 2006. This certainly would have provided him with some notice that there was an issue with GRG's ownership of these parcels and that he could have investigated this issue in the 15 years between that alleged later discovery and Freelon's filing of the complaint. Moreover, even assuming Gannett and GRG were not aware of Roof's failure to transfer the parcels until after Freelon filed her complaint, that discovery is irrelevant to our analysis because the discovery rule is not applicable to their declaratory judgment action as described above. *See Taylor-Winfield Corp. v. Huntington Bank,* 2021-Ohio-3480, ¶ 21 (11th Dist.).

16.

**{¶ 38}** Put simply, Freelon adequately supported her argument that she will suffer prejudice as a result of appellants' failure to file their declaratory judgment action to invalidate the Roof shares within a reasonable time. Appellants fail to identify any portion of the record that negates Freelon's laches defense to appellants' declaratory judgment claim for Roof's alleged breach of a bilateral contract. For these reasons, we find that the trial court did not err in denying appellants' motion for summary judgment on their declaratory judgment claim under the doctrine of laches.

### iii. Appellants' unjust enrichment claim is barred as a matter of law.

Appellants' second assignment of error also alleges that the trial court erred in denying their motion for summary judgment on their unjust enrichment claim. In that claim, appellants seek to recover funds GRG paid to Roof as a shareholder under a theory of unjust enrichment. Such a claim is invalid under Ohio law when an express contract exists. *See Bickham v. Standley,* 2009-Ohio-3530, ¶ 14 (3d Dist.), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51 (1989) ("the doctrine of unjust enrichment cannot apply when an express contract exists."). Having found that the parties entered in an express contract, appellants could not succeed on their unjust enrichment claim as a matter of law and the trial court did not err in denying their motion for summary judgment on this claim.

17.

#### iv.  The trial court's denial of appellants' motion for summary judgment was correct, but for the wrong reasons

{¶ 39} For the reasons identified herein, we find that the trial court did not err in denying appellants' motion for summary judgment on their declaratory judgment and unjust enrichment counterclaims. We note that our conclusions are based on reasons not relied on by the trial court.  We are not precluded, however, from affirming the trial court's decision for other reasons as long as the other bases relied on does not result in prejudice to the appealing party.  *See State ex rel. Sommers v. Perkins Local Schools Board of Education,* 2017-Ohio-7991 (6th Dist.) ("this court will not reverse a trial court decision that achieves the right result for the wrong reason, because such an error is not prejudicial.").  The trial court's denial of appellants' motion was correct and they suffer no prejudice from this court affirming that judgment for different reasons.  Therefore, we find appellants' second assignment of error not well-taken.

{¶ 40} Having resolved appellants' second assignment of error by finding, in part, that their counterclaims are time-barred, we find that our analysis of their first assignment of error is constrained as the arguments they relied on in support of their own motion for summary judgment are identical to those alleged in opposition to Freelon's motion.

### C.  The trial court did not err in granting Freelon's motion for summary judgment.

{¶ 41} In their first assignment of error, appellants argue that the trial court erred in granting Freelon's motion for summary judgment.  Their argument—that the parties never entered into a binding contract and, as a result that Freelon was not a shareholder

18.

that could seek judicial dissolution of GRG—is identical to the arguments raised in their second assignment of error. We find that the trial court did not err in granting Freelon's motion for summary judgment.

{¶ 42} In her motion for summary judgment, Freelon argued that she was a director of GRG and that she was trustee of the Roof trust that controlled 50 shares in GRG. She and Gannett are the sole directors of GRG and are deadlocked on whether to dissolve GRG. Freelon's complaint alleges that because she controls 50% of the total shares in GRG, and because Gannett controls the other 50%, that their deadlock cannot be broken by the shareholders. As a result, she sought judicial dissolution of GRG pursuant to R.C. 1701.91(A)(4).

{¶ 43} In support of her motion for summary judgment, Freelon identified the share certificate GRG issued to the Roof trust, coupled with her role as trustee of that trust, as evidence that she controls 50% of the stock in GRG. This certificate is sufficient to create a presumption that the Roof trust owned the shares identified on the certificate. *See Robson v. Discount Drug Mart, Inc.*, 2023-Ohio-3291, ¶ 15 (9th Dist.), quoting *Algren v. Algren*, 2009-Ohio-3009, ¶ 22 (2d Dist.). By averring that she was the trustee of the Roof trust's shares and that, as trustee, she was tasked with controlling the votes of those shares, Freelon satisfied her initial burden under Civ.R. 56 to show that there were no genuine issues of material fact and that she was entitled to judgment as a matter of law on her request for judicial dissolution. *Wright-Patt* at ¶ 9.

19.

{¶ 44} Upon satisfying her burden as the moving party under Civ.R. 56, the burden then shifted to appellants to show that there was a genuine issue for trial. *Id.* We find that appellants failed to satisfy their reciprocal burden. The relevant portion of appellants' opposition argues that the Roof trust is not a shareholder of GRG and, therefore, that Freelon cannot control the votes of those shares, because Roof never transferred the parcels of land required by his contract with GRG. In support of this argument, appellants simply renewed the arguments made in support of their declaratory judgment action that the transfer of shares was invalid because Roof never transferred the bargained-for parcels of land. Notably, appellants offered no additional evidence, unrelated to the allegedly void contract between GRG and Roof, to refute the presumption that the stock certificate issued to the Roof Trust was valid or that Freelon, as trustee, controlled the votes of those shares.

{¶ 45} We already determined that appellants' arguments that the stock transfer was void are time-barred. Although those claims are time-barred, this does not necessarily preclude their use as a defense to Freelon's motion. Instead, time-barred claims are "available as a defense * * * when [they arise] out of the same transaction as the plaintiff's claim for relief, and when [they are] offered to reduce the plaintiff's right to relief." *See Riley v. Montgomery,* 11 Ohio St.3d 75 (1984). Our review of the record shows that appellants' renewal of their expired counterclaim as a defense to Freelon's request for dissolution of GRG does not meet either of these elements.

20.

{¶ 46} First, a claim arises out of the same transaction when it is "logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Rettig Enterprises, Inc. v. Koehler,* 68 Ohio St.3d 274 (1994). We find that there is nothing duplicative between Freelon's request for judicial dissolution of GRG based on a director and shareholder deadlock and appellants' claim that Roof breached his contract with GRG 17 years prior. Second, even if these claims even arguably arose from the same transaction, there is absolutely nothing in the record to suggest that appellants advanced their claim to reduce Freelon's right to relief. *See Id.* at 78 (holding that time-barred counterclaims under the common-law theory of recoupment may be used to reduce a plaintiff's right to relief). Indeed, Freelon is not seeking relief that can be reduced as she seeks no monetary award. Therefore, we find that appellants' cannot use these time-barred claims as defenses to Freelon's motion for summary judgment and they do not satisfy their reciprocal burden to show that there was an issue for trial in this action. Freelon, having satisfied her burden under Civ.R. 56, was entitled to summary judgment as a matter of law.

{¶ 47} As a result, we find that the trial court did not err in granting Freelon's motion for summary judgment, albeit for reasons other than those relied on by the trial court. *See Sommers,* 2017-Ohio-7991 (6th Dist.). We find appellants' first assignment of error not well-taken.

21.

## V. Conclusion.

{¶ 48} For these reasons, we find appellants' first and second assignments of error not well-taken and affirm the July 7, 2023 judgment of the Huron County Court of Common Pleas granting summary judgment in favor of appellee.

{¶ 49} Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.          _____
                                         JUDGE

Gene A. Zmuda, J.         

                                       _____
Charles E. Sulek, P.J.                              JUDGE
CONCUR.

                                       _____
                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.