[Cite as *Tunnacliffe v. Carr*, 2025-Ohio-5590.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

CHARLES E. TUNNACLIFFE,
TRUSTEE OF TUNAMAN
REVOCABLE LIVING TRUST,
ET AL.,

    Plaintiffs-Appellees,

    v.

BARBARA CARR, ET AL.,

    Defendants-Appellants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 23CA1166
Case No. 23CA1167
(Consolidated for purposes
of decision)[1]

<u>DECISION AND JUDGMENT
ENTRY</u>

**RELEASED 12/10/2025**

_____
<u>APPEARANCES:</u>

D. Luke Meenach, Matthew Bockery, Mark Cardosi, Southeastern Ohio Legal Services, Portsmouth, Ohio, for Defendant-Appellant Donna Barrett.

Richard B. Uhle, Jr., Durkee and Uhle, LLC, Batavia, Ohio for Defendant-Appellant Barbara Carr.

Ronald Barrett, Peebles, Ohio, Defendant Pro Se.[2]

Tyler E. Cantrell, Young & Cantrell, LLC, West Union, Ohio, for Plaintiff-Appellee.

Hess, J.

{¶1} Donna Barrett and Barbara Carr appeal judgment entries of the Adams County Court of Common Pleas following a jury trial which found that they violated restrictive covenants when they bought and sold certain real property and awarded damages and attorney fees against them. They filed post-trial motions, which the trial court denied.

---

[1] Donna Barrett's appeal (Case No. 23CA1166) and Barbara Carr's appeal (Case No. 23CA1167) were consolidated pursuant to App.R. 3(B), which provides that, "[a]ppeals may be consolidated by order of the court of appeals or on its own motion."

[2] Ronald Barrett has not participated in this appeal.

{¶2}    Barrett and Carr collectively raise 8 assignments of error and make a total of 16 different arguments in support of the purported errors. We find that only one of the assignments of error has merit. We find that the jury's award of attorney's fees was not supported by sufficient evidence and was against the manifest weight of the evidence. Tunnacliffe failed to present evidence of the reasonableness of the attorney's fees from which the jury could make that determination. Therefore, we modify the jury verdict to set aside the award of attorney's fees. The expert witness fees and the court reporter deposition fees were not challenged and shall not be set aside. The trial court's award of attorney's fees following the injunction hearing was not challenged on appeal and shall not be set aside. We overrule all other assignments of error and remand the cause to the trial court to modify the judgment entry as specified in more detail below.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶3}    The basic facts of the case are largely undisputed and were presented at trial. The Cowan family owned a 509.1-acre farm in Adams County. They subjected the land to restrictive covenants known as the Cowan Covenants. Two restrictions are relevant here: (1) no modular or mobile homes, house trailers, or campers could be placed on the property for use as a residence and (2) the property could not to be subdivided into tracts smaller than 20 acres. The building type restriction stated:

> No modular or mobile homes or temporary structure of any kind, house trailer, camper, recreational vehicle, tent, or other such facility shall be erected, placed, or permitted to remain on the property for use as a residence. A recreational vehicle or campers permitted on the property for casual use such as weekend visitation or limited vacation purposes.

And the tract size subdivision restriction stated:

> The previously described property shall not be subdivided into any tracts smaller than 20 acres.

The provision governing the enforcement of the restrictive covenants stated:

> The foregoing covenants shall run with the property and shall be binding upon all current and future owners of any portion of the original tract. The covenants may be amended at any time by a recordable instrument executed by all the then current owners of the land which constituted the original parent tract. If any owner of any property of the property [sic] shall suffer or permit violation of any of such covenants then any other owner of any portion of the property may institute proceedings at law or in equity to restrain the violation or threatened violation of the covenants and to recover damages thereof, together with reasonable attorney's fees and other costs of litigation.

{¶4} Carr and her now deceased husband purchased 30.832 acres from the Cowan family in 1997. The Carrs subdivided this property into a 20-acre lot and a 10.832-acre lot in 2005 and sold the 10.832-acre lot to Donna and Ronald Barrett in 2009. Donald Wilson, a real estate broker with Wilson Realtors, listed the 10.832 acres for the Carrs. When the Carrs and Barretts reached an agreement, Wilson sought legal advice due to the undersized lot and advised the Barretts and Carrs to do the same. Wilson gave the Barretts a copy of the Cowan Covenants and a release of liability form, which both the Barretts and the Carrs signed, that read in part:

> The Buyers and Sellers understand that the sale or division of this property into a tract less than 20 acres is a violation of the Protective Covenants of the property . . . more specifically, covenant number seven wherein said property shall not subdivide into tracts smaller than 20 acres.
>
> The Buyers and Sellers understand that this is a violation of this covenant. Buyers and Sellers hereby agree to hold harmless the

Realtor . . . from any liability thereon. Buyers, further agree to hold harmless the Sellers . . . from any liability thereon.

**{¶5}** The Carrs also signed an acknowledgement form that read in part:

The Sellers understand that the sale or division of this property into a tract less than 20 acres is a violation of the Protective Covenants . . . .

The Sellers acknowledge and understand this is a violation of this covenant. Sellers hereby acknowledge that they sought legal advice from Barbara Moore-Eiterman, Attorney at Law, and that the sale of this real estate without filing suit to lift the restrictions is against her legal advice and counsel.

**{¶6}** After the Barretts purchased the 10.832-acre parcel in October 2009, they installed a 14x70 1986 Fleetwood single-wide mobile home on it in 2010.[3] Shortly after the Barretts installed the mobile home, they received notice from a neighbor, William Moore, who also owned land restricted by the Cowan Covenants. Moore's lawyer wrote two letters to the Barretts in July and August 2010 advising them that the mobile home they had installed on the property violated the Cowan Covenants and asking them to remove it. The Barretts refused to comply with Moore's request. The Barretts responded with a letter explaining that the mobile home was not "for use as a residence," but was a temporary "shelter" they intended to use only a few years until they sold a farm business elsewhere and moved there permanently. They planned to remove the mobile home at that time and build a permanent residence. Donna Barrett also testified that the mobile home was initially intended to be only a temporary structure but

---

[3] In Barrett's interrogatory response, when asked when she installed the mobile home on the property, she responded, "I think it was August, 2011." However, neighbors were writing letters of complaint about it in July and August 2010.

admitted that it had been on the property for nine years and is her permanent residence.

{¶7}   Moore testified that shortly after notifying the Barretts of his objections to the mobile home, his wife became ill and he transferred a portion of his property to a trust and the remainder of it to his two children. As a result, he did not pursue further action against the Barretts.

{¶8}   The Barretts divorced and Ronald Barrett conveyed his interest in the 10.832-acre lot to Donna Barrett via a quitclaim deed in 2016. The quitclaim deed incorporated the Cowan Covenants and stated, "This property is subject to Protective Covenants recorded in . . . Adams County Official Records."

{¶9}   Barbara Carr testified that before selling the 10.832-acre lot to the Barretts, the Carrs had a prior offer from another potential buyer, but that offer was contingent upon the Carrs removing the restriction in the Cowan Covenants that prohibited subdivision of the land in less than 20-acre parcels. The Carrs attempted to remove that restriction by obtaining the consent of the other current property owners but were unsuccessful. As a result, the Carrs sold to the Barretts, who did not require the removal of that restriction.

{¶10}  Carr testified that she did not know that the Barretts intended to place a mobile home on the property, which she believed violated the restrictive covenant. Carr testified that she had a discussion with the Barretts soon after they installed the mobile home and told them that it was not allowed because it violated the Cowan Covenants. Carr testified that had she known the Barretts were going to install a mobile home on the property she probably would not have sold it to

them. Carr also testified that she believed all the restrictive covenants in the Cowan Covenants are enforceable, including the limitation on subdividing the property into less than 20-acre parcels, but that she went through with the deal because she was going along with her late husband's decision.

{¶11} In January 2006, about four years before the Barretts bought their 10.832-acre parcel from the Carrs, Charles Tunnacliffe purchased a 126.688-acre lot from P.P.&P. Partnership ("PPP").[4] Tunnacliffe was aware of the Cowan Covenants prior to purchasing the property and understood that they applied to the property he was purchasing and that the land must be sold in not less than 20-acre parcels.

{¶12} Shortly after Tunnacliffe purchased the property he learned that PPP had previously subdivided certain parcels into less than 20-acre lots and had been sued by the Cowans for violating that restriction in the Cowan Covenants. PPP had purchased 264.34 acres of the Cowan farm property bound by the Cowan Covenants in 1998. PPP then subsequently divided and sold several of the parcels in less than 20-acre lots. Cowan sued PPP and others in 1999 to enforce the terms of the Cowan Covenants (the "1999 Cowan Litigation"). The parties resolved the dispute in August 2002 by an agreed judgment entry (the "2002 Judgment Entry") in which five undersized parcels were exempted from the 20-acre requirement. In the agreed judgment entry, the trial court exempted certain owners of real property from the Cowan Covenants (i.e., Alice Mendenhall, Michael and Christine Farmer,

---

[4] In 2012, Tunnacliffe conveyed the property to the Tunaman Revocable Living Trust. He brought this lawsuit as the trustee of the Tunaman Trust and as a beneficiary. For simplicity, we refer to these parties singularly as Tunnacliffe.

Tom Partin, David Purdin, Missy Partin, and certain PPP partnerships). The trial court amended the Cowan Covenants to maintain the 20-acre subdivision restriction on all property except certain specific tracts as identified below:

> **7. SUBDIVISION**: The previously described property shall not be subdivided into any tracts smaller than 20 acres.
>
> **8. EXCLUSION**: Number 7 shall not apply to a tract of land containing 1.667 acres identified as Tract 2 on the aforementioned plat of survey; further, Number 7 shall not apply to the Mendenhall property, Farmer property and the Partin, et al. tracts of:
> A. 4.486 acres, Meigs Township, Adams County, Ohio;
> B. 5.630 acres, Meigs Township, Adams County, Ohio;
> C. 5.000 acres, Meigs Township, Adams County, Ohio.

**{¶13}** Thus, Tunnacliffe understood that the Cowan Covenants continued to be applicable to all property except for the specific tracts identified in the 2002 Judgment Entry. In 2011, shortly after Barretts purchased the 10.832-acre parcel from Carrs and installed a mobile home, Tunnacliffe saw the mobile home on the property and learned that the Carrs had sold 10.832 acres to the Barretts. Tunnacliffe spoke to Donna Barrett in 2011 about the mobile home and she told him it was temporary and they were going to build a house in the next 12 to 18 months. He asked her if she was aware there were covenants and she told him, "those covenants are nothing but a bunch of bullshit."

**{¶14}** Tunnacliffe decided that to prevent future attempts to subdivide property in less than 20-acre lots and install mobile homes, he would attempt to get all the current property owners to agree to amend the Cowan Covenants to allow a one-time exception for the Carr-Barrett sale and for Barretts' mobile home. These efforts took him approximately two to three years because his permanent residence at the time was in the Cincinnati area, he worked a full-time job, a lot of

research was involved, and properties were bought and sold during the interim and he had to locate new owners. Ultimately, Tunnacliffe's attempts to obtain an agreement from the current property owners failed and he asked his attorney to notify the Carrs and the Barretts that their sale must be rescinded. The Carrs and Barretts refused to rescind the sale. In 2016, about two to three years after Tunnacliffe's attempt to amend the Cowan Covenants by agreement of all current property owners failed, he filed the current lawsuit against the Carrs and Barretts for violations of the Cowan Covenants.

{¶15} Following the trial, the jury found that Carr and Barrett violated the terms of the Cowan Covenants when they sold and purchased the 10.832-acre lot and that Barrett violated the Cowan Covenants by installing a mobile home on the lot. The jury awarded Tunnacliffe $29,100.00 against both Carr and Barrett for the lot size violation and awarded Tunnacliffe $29,100.00 against Barrett for the mobile home violation. After seeking clarification, the jury explained that the award of $29,100 was not a single award but was intended to be two separate awards for the two separate violations for a total award of $58,200. Following the verdict, the parties argued the matter of punitive damages to the jury. After a second deliberative process, the jury found that Carr and Barrett did not act with malice and awarded no punitive damages.

{¶16} The trial court held a hearing in November 2019 to address the request for injunctive relief. It memorialized the jury's verdict in a Judgment Entry filed January 24, 2020. The trial court determined that the defendants, jointly and severally, owed an additional $2,310 in attorney fees incurred since trial. The court

also awarded injunctive relief. It ordered Donna Barrett's mobile home be removed from the real estate within 180 days. The trial court further held that if there was no binding contract for the sale of Barrett's real estate to any adjoining property owner, then "the real estate deed shall rescind to [Carr]."

**{¶17}** Barrett filed a motion for judgment notwithstanding the verdict, "JNOV," and a motion, in the alternative to JNOV, for a new trial or remittitur. Carr also filed a renewed motion for JNOV. On February 9, 2023, the trial court denied the pending motions for JNOV, new trial, and remittitur. Barrett and Carr timely appealed and we granted a stay pending appeal.

## I.      ASSIGNMENTS OF ERROR

**{¶18}** Barrett raises the following assignments of error:

1. The jury's verdict was against the manifest weight of the evidence.

2. The trial court erred as a matter of law by ordering that the deed be rescinded to Carr without providing restitution to Donna.

3. The trial court erred as a matter of law in denying Donna's motion for judgment notwithstanding the verdict.

4. The trial court abused its discretion when it denied Donna's motion for remittitur.

**{¶19}** Carr raises the following assignments of error:

1. The jury's verdict was against the manifest weight of the evidence.

2. The trial court erred by allowing the jury to determine damages and attorney fees.

3. The trial court erred by allowing issues of law to be decided by the jury.

4. The trial court erred by barring evidence of hardship of appellants.

## III. LEGAL ANALYSIS

A. Laches, Wavier, and Abandonment

**{¶20}** Both Barrett and Carr contend that the verdict was against the manifest weight of the evidence. Barrett contends that the jury's determination that the doctrine of laches was inapplicable was against the manifest weight of the evidence because Tunnacliffe waited four or five years before he filed the lawsuit without providing any reason for the delay. She claims she was prejudiced because "this suit affected her legal right, namely, her right to own and use property."

**{¶21}** Carr contends as part of her first assignment of error that the jury's determination that there was no waiver or abandonment of the Cowan Covenants was against the manifest weight of the evidence because the properties involved in the 1999 Cowan Litigation were in violation of the Cowan Covenants and were permitted to exist for years.

1. Standard of Review:  Manifest Weight of the Evidence

**{¶22}** The standard of review for whether a judgment is against the manifest weight of the evidence in a civil case is the same as it is in a criminal case. *State Dept. of Nat. Resources, Div. of Forestry v. Srofe*, 2024-Ohio-1842, ¶ 34 (4th Dist.). We review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a

reviewing court as being against the manifest weight of the evidence." *C.E. Morris*

*Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

### 2. Barrett's Laches Defense

**{¶23}**  The doctrine of laches is an equitable defense.

> "The most memorable equitable maxim learned by every first year law student is 'he who comes seeking equity must come with clean hands.' "  "In order to have any standing to successfully assert an equitable defense, i.e., laches, one must come with clean hands, and if he has violated conscience or good faith or has acted fraudulently, equitable release in defenses are not available to him."  (Citations omitted).

*Meek v. Geneva,* 2017-Ohio-7975, ¶ 49 (5th Dist.).

**{¶24}**  Barrett knew about the Cowan Covenants when she purchased the property. She signed a release at the time of the closing in which she acknowledged a lot size under 20 acres "is a violation of this covenant" and she agreed "to hold harmless" the realtor and the Carrs. She received a letter in 2010 from her neighbor, Moore, advising her that her mobile home was a violation of the Cowan Covenants. The Barretts responded with a letter advising him that the mobile home was only temporary and they would be removing it in a few years. Carr told her that the mobile home violated the Cowan Covenants and Barrett again represented that it was only temporary. She received a verbal notice from Tunnacliffe in late 2010 or 2011 that the mobile home was a violation of the Cowan Covenant. Donald Barrett testified that he tried to get the then current property owners, including Moore, to agree to change part of the Cowan Covenants, but he was unsuccessful. Donna Barrett acknowledged that her husband quitclaimed a deed in 2016 to her that explicitly included the Cowan Covenants. However, the

parties and the trial court did not address whether, under these facts, Barrett had unclean hands. Thus, we will not consider whether the evidence shows that she failed to act in good faith in asserting a laches defense.

**{¶25}** Laches is an affirmative defense under Civ.R. 8(C) and Barrett carried the burden of proof on the issue by a preponderance of the evidence. *Bungard v. Jeffers*, 2014-Ohio-334, ¶ 12 (4th Dist.). "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Leneghan v. Husted*, 2018-Ohio-3361, ¶ 18. The prejudice must be material. *State ex rel. Pennington v. Bivens,* 2021-Ohio-3134, ¶ 26. "What constitutes material prejudice is primarily a question of fact to be resolved through a consideration of the special circumstances of each case." *State ex rel. Doran v. Preble Cty. Bd. of Commrs.*, 2013-Ohio-3579, ¶ 30 (12th Dist.).

**{¶26}** Even if we assume that the delay in the lawsuit was unreasonable, we find that the jury had some competent, credible evidence to find that Tunnacliffe provided an excuse for the delay. First, Tunnacliffe testified that he resided in the Cincinnati area, worked full-time, and had children who were involved in school activities, so he visited his property and the area less frequently and was only aware of Carr's sale to the Barretts after he saw Barrett's mobile home installed on the property. Tunnacliffe also testified that he tried to amicably resolve the dispute by talking to both Carr and Barrett and obtaining their agreement to rescind the sale and remove the mobile home. Tunnacliffe also testified that he researched

the properties and attempted to obtain an agreement from all the then current property owners to amend the Cowan Covenants to provide for the Carr-Barrett sale and the mobile home. He went door to door, but his efforts were frustrated by the fact that some of the properties were sold and new owners had to be located. Finally, we find that Barrett contributed to and invited some of the delay by representing to everyone that approached her that the mobile home would only be there temporarily and they would be removing it in a year or two.

{¶27} Additionally, Barrett failed to cite to any place in the record where she provided evidence that she was materially prejudiced by the delay. "Material prejudice exists when the defendant shows (1) the loss of evidence helpful to the defendant's case or (2) a change in the defendant's position that would not have occurred if the plaintiff had asserted [their] rights sooner." *Freelon v. GRG Farms, Inc.,* 2024-Ohio-4764, ¶ 32 (6th Dist.), citing *Pollard v. Elber*, 2018-Ohio-4538, ¶ 30 (6th Dist.). She vaguely argues that the delay prejudiced her "because this suit substantially affected her legal right . . . to own and use property." No doubt the jury verdict substantially affected her property rights, but that result would have occurred regardless of when the suit was filed and was not caused by delay. The delay merely allowed her to continue to enjoy the ownership and use of the property longer than she otherwise would have had Tunnacliffe sued her in 2011 or 2012 soon after Tunnacliffe learned of the violations (Barrett never provides a specific date or year she would find timely), rather than 2016. Moreover, we have independently reviewed Barrett's testimony and can find no evidence that she was prejudiced by any delay in the filing of the lawsuit. She testified that she purchased

the property in the fall of 2009, moved horses to the property, and installed a mobile home soon after the purchase, likely by July 2010 when Moore first sent her a letter about it. After 2010, she simply lived there and performed routine upkeep. She made no claims that she expended funds to make substantial improvements to the property, that evidence was lost or spoiled, or that key witnesses were no longer available. Barrett presented no evidence that she was materially prejudiced by the delay in filing the lawsuit.

**{¶28}** Based on our review of the entire record, after weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that, in resolving conflicts in the evidence, the jury did not lose its way when it found that laches was inapplicable, nor did the jury create such a manifest miscarriage of justice that the judgment must be reversed. We overrule Barrett's first assignment of error.

### 3. Carr's Wavier and Abandonment Defenses

**{¶29}** Carr does not challenge the jury's rejection of the laches defense but instead contends that there was a waiver and abandonment of the lot size restriction in the Cowan Covenants. She contends that this waiver and abandonment occurred because the 1999 Cowan Litigation allowed exceptions to certain restrictions on the specific parcels involved in that suit. In essence Carr argues that the 1999 Cowan Litigation resulted in the abandonment of the restrictive covenants on all properties. Carr also argues that there have been two additional violations of the Cowan Covenants since the trial in this case. Because

the two purported violations are outside the record, we disregard those purported

violations.

**{¶30}** For over a century the established law in Ohio has held that

restrictive covenants establishing plans for the development of a tract of property

that make the property more attractive for residential purposes are generally

enforceable unless contrary to public policy. *Wallace v. Clifton Land Co.*, 92 Ohio

St. 349 (1915), paragraph one of the syllabus; *Dixon v. Van Sweringen Co.*, 121

Ohio St. 56 (1929), paragraph one of the syllabus. "If the language in a restrictive

covenant is clear and not doubtful in meaning, the court must enforce the

restriction.' " *DeRosa v. Parker*, 2011-Ohio-6024, ¶ 9 (7th Dist.), citing *Cleveland

Baptist Assn. v. Scovil*, 107 Ohio St. 67, 71-77 (1923). " 'Proof of actual damage

is not required as a basis for granting injunctive relief regarding deed restrictions.'

" *DeRosa* at ¶ 9, quoting *Goutras v. Dillon–McDonald,* 1991 WL 207949 (5th Dist.

Sept. 30, 1991).

**{¶31}** A waiver or abandonment of a restriction may occur if the restriction

has been violated by others to such an extent that it has "so changed the character

of the neighborhood that the restriction in question is valueless to the property

owners." *Houk v. Ross*, 34 Ohio St.2d 77, 91 (1973) (finding that the existence of

9 duplexes in a subdivision did not result in a waiver of the right to enforce the

restrictions against duplexes); *Santora v. Schalabba*, 2002-Ohio-2756, ¶ 10 (8th

Dist.) (finding that when 11 out of 52 homes in a subdivision installed similar

fencing without seeking approval from the subdivision board, it  resulted in a waiver

of the deed restriction governing fencing). A party alleging a waiver or abandonment has the burden of proving his or her allegations. *DeRosa* at ¶ 44.

{¶32} Carr argues that both the mobile home restriction and the lot size restriction were waived. She contends that one other property had a mobile home on it in addition to Barrett's and that at the time of trial 8% of the properties had lot sizes under 20 acres. However, Tunnacliffe presented evidence that the one other mobile home that violated the restrictive covenants was part of the 1999 Cowan Litigation and was excepted from the Cowan Covenants in the 2002 Judgment Entry. Because that property was excepted from the Cowan Covenants, it was not bound by the mobile home restriction and was not "in violation" of it for purposes of a waiver analysis.

{¶33} Tunnacliffe presented evidence that only 2.9% of the total properties initially covered by the Cowan Covenants were less than 20 acres in size and that most of those were part of the properties involved in the 1999 Cowan Litigation. As a result, there were a distinct number of properties that were excepted from the 20-acre lot restriction.

{¶34} Those properties that were no longer subject to the 20-acre lot restriction are not in violation of the restrictions for purposes of the waiver analysis. The only properties relevant to a waiver analysis of the 20-acre lot restriction are those properties that are subject to the Cowan Covenants restriction on 20-acre lot size. Properties that have been legally exempted from the Cowan Covenants are no more a part of the waiver analysis than are properties that have never had the restrictions placed upon them in the first instance. Those properties involved

in the 1999 Cowan Litigation are not examples of how the 20-acre lot restriction is being unenforced and therefore waived, they are examples of properties against which an enforcement lawsuit was commenced, but which were found to be exempt from the 20-acre lot restrictive covenant.

{¶35} That is a significant factual distinction that defeats Carr's waiver argument. All the cases Carr cites in support of her waiver argument involved references to "example properties" that were themselves subject to the restrictive covenant in question – properties that were also in violation of a covenant but were never penalized. The cases involving fences, free standing basketball hoops, RV storage, and duplexes[5] all involved situations where other properties *subject to the same restrictive covenants* were violating the covenants and were getting away with it. Here, Carr has identified other properties that have been legally determined by the 2002 Judgment Entry *not to be subject to the same restrictive covenants*. As a result, it is not that these properties are violating a restrictive covenant and getting away with it; it is that they are not violating a restrictive covenant at all. They lend no support to a waiver argument. We have found no case in which a party was permitted to use properties that were not restricted by a restrictive covenant as evidence of a waiver of that restriction.

---

[5] *Santora v. Schalabba*, 2002-Ohio-2756 (8th Dist.) (11 other fence owners); *DeRosa v. Parker*, 2011-Ohio-6024 (7th Dist.) (1 other camper storage); *Landen Farm Community Serv. Assn., Inc. v. Schube*, 78 Ohio App.3d 231 (12th Dist. 1992) (50 other freestanding basketball hoops); *Houk v. Ross*, 34 Ohio St.2d 77 (1973) (13 other duplexes).

**{¶36}** Additionally, Tunnacliffe testified and presented the testimony of several neighbors who testified that those restrictions were meaningful, provided security, and had value to them. Even Carr testified that she valued the mobile home restriction and probably would not have sold the property to Barrett had she known they were going to place a mobile home on the property.

**{¶37}** We find that there was some competent credible evidence for the jury to reject the wavier and abandonment defense and determine that the character of the neighborhood had not changed and that the restrictions in question (20-acre lot size and mobile home) still retained value to the property owners. Even assuming an 8% violation of the 20-acre lot as argued by Carr, the jury could reasonably determine that this was an immaterial or minor change that did not affect the value of the restrictions to the property owners. Based on our review the entire record, after weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that, in resolving conflicts in the evidence, the jury did not lose its way and its rejection of a waiver or abandonment defense against the enforcement of the restrictive covenants did not create such a manifest miscarriage of justice that the judgment must be reversed.  Carr's waiver and abandonment argument has no merit.

B. Carr & Barrett's Arguments Against Damages & Attorney Fees

**{¶38}** Carr contends that the jury's award of damages was against the manifest weight of the evidence because Tunnacliffe testified "that he does not mind multiple lots under 20 acres." However, when we review the places in the record that Carr cites as evidence that Tunnacliffe "does not mind" the existence

of lots less than 20 acres, we find those references are taken out of context. Tunnacliffe is discussing the properties that were part of the 1999 Cowan Litigation. He explains that he is not concerned with those properties because they were exempted from the restrictive covenants and therefore will not lead to the "opening of the can of worms." However, the property Carr sold was not exempted and the Carr-Barrett sale violated the covenants. A typical example of Tunnacliffe's testimony is:

Q: You don't mind the exceptions?

A: I don't mind the exceptions because they were done legally, there is a court order that said, okay, we are going to grandfather them in, the Cowan Covenants are in good standing, so everything was fine. And then a can of worms got opened up all over again as soon as Mrs. Carr sold those less than 20 acres and then complicated it even more when the Barretts put the mobile home on it.

*          *          *

Q: So somehow the appearance of the [Barrett] 10 acres is different than the appearance of [another owner's] five acres?

A: No, it's not the appearance that I am concerned about, it's the door that has been opened for other people to do exactly what the Carrs did, because now that they have done that and 10 or 15 years go by what is stopping somebody else like that 17 acres horse pasture. Why can't somebody go in there and carve up half acre lots and put in 15 mobile homes right at the top of my hill. That person could rent those spaces out and it would pay for their house. And that can be done now because the barn door is open again. After that other court order the barn door got shut. Now it got reopened when they did it again.

{¶39} Tunnacliffe testified that he was concerned with the Carr-Barrett sale and the subsequent installation of the mobile home because it violated the restrictive covenants and, if not stopped, could open the door for others to carve much smaller lots and install multiple mobile homes in the future. Contrary to Carr's

representations, Tunnacliffe did not testify that he had no objections to lots under 20-acres in size. We find no merit to Carr's argument that Tunnacliffe is not entitled to attorney's fees because he had no objection to the small lot sizes on some of the parcels.

{¶40} In Carr's second assignment of error, she repeats her contention that damages should not have been awarded. She claims that because Tunnacliffe withdrew the claim for damages and there was no evidence of the reasonableness of the legal fees, the trial court erred by allowing the jury to award them. Barrett also contends that the trial court erred in allowing the jury's award of attorney's fees because there was no evidence that the attorney's fees were reasonable. Both Carr and Barrett raised objections to the award of attorney's fees at trial, in their motions for judgment notwithstanding the verdict, and Barrett also raised it as a ground for remittitur.

{¶41} A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence and therefore presents a question of law which we review de novo. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 25. In deciding a motion for a judgment notwithstanding the verdict under Civ.R. 50(B) the court must construe the evidence in favor of the nonmoving party. Only if the court finds that upon any determinative issue reasonable minds could come to but one conclusion and the moving party is entitled to judgment as a matter of law, the court must grant the motion. In doing so, a trial court may not weigh the evidence or judge witness credibility. If there is a rational basis for the jury's verdict, a court must not intercede. *Simon v. Aulino,* 2020-Ohio-6962, ¶ 19 (4th Dist.).

{¶42} Prior to trial, Tunnacliffe filed a motion to dismiss his claim for monetary damages other than his claims for attorney fees, expenses, costs, expert witness fees, and punitive damages. The trial court granted the motion and allowed evidence of the attorney's fees damages to be submitted to the jury:

> The Plaintiffs' claim for monetary damage is dismissed with the exception of the claims for attorney fees, expenses, costs, punitive damages and expert witness fees. These exempted claims shall remain pending and shall be submitted to the jury at trial.

{¶43} Tunnacliffe's claim for attorney's fees was made pursuant to the Cowan's Covenant which provides for the award of attorney's fees and the costs of litigation as damages when a property owner "institute[s] proceedings at law or in equity to restrain the violation or threatened violation of the covenants." When the restrictive covenants allow for the recovery of attorney's fees in actions for injunctive relief to enforce restrictive covenants, the court will permit their award. *Morgan Woods Homeowners' Assn. v. Wills*, 2012-Ohio-233, ¶ 61-62 (5th Dist.) (in an action involving the enforcement of restrictive covenants, party was allowed to recover attorney fees because the restrictions governing the property provided for them); *Heather Lake Assn. v. Billiter*, 2017-Ohio-8387, ¶ 37 (5th Dist.).

{¶44} The parties stipulated that a $200 hour attorney rate was reasonable. Tunnacliffe presented evidence of his attorney fees in the sum of $33,050.00 pretrial and $13,100.00 for four of the five days of trial, court reporter deposition fees of $3,672.50, and expert witness fees of $5,100.00, all which totaled $54,922.50. Tunnacliffe also testified that he paid an additional $1,500.00 in attorney fees at the start of the lawsuit in 2016, which when added brings the total to $56,422.50. Presumably the jury added the final day of trial to the figure to

calculate an award of $58,200. The attorney fee statements included descriptions of the work performed and the amount of time to complete each task. The hourly rate for the work did not exceed $200, which was the stipulated reasonable hourly rate.

{¶45} Barrett's attorney objected to the presentation of attorney fees and court costs and Carr's attorney joined in because he believed that the question of attorney's fees should be bifurcated from the issue of liability. In response to Tunnacliffe's counsel stating that he was going to establish the cost of litigation and the reasonableness of his attorney's fees through the expert witness, who was an attorney, Carr's attorney objected:

> [Carr's Counsel]: I think that should not be allowed, I don't think we should be jumping right into attorney fees, I think the jury is going to have to make some kind of determination before we talk about attorney fees. I guess maybe I should make a motion to bifurcate those issues because I don't think attorney fees and punitive damages should be discussed during the chief part of the case when we are still determining the threshold issues whether there is any liability at all.

The parties then discussed the fact that the Cowan Covenant gives Tunnacliffe reasonable attorney's fees and the costs of litigation as damages if he successfully shows a violation. Carr's attorney appeared to agree but also wanted to preserve his right to argue the reasonableness of those fees, "I don't think we can argue that they are just automatically barred from attorney fees. We can still argue what is reasonable and how many hours they should have done." The trial court decided, "So I'm going to advise the jury that the objection is withdrawn and the parties are stipulating or agreeing that $200 is a reasonable hourly rate for this type of litigation. Fair enough?" Carr's attorney responded, "Absolutely."

{¶46} Later during the trial the issue of attorney's fees arose again, with the trial court describing the objection as, "And the issue being should Mr. Tunnacliffe declare the amount of money spent thus far through June 23, 2019 in attorney's fees." Carr's attorney objected,

> Just so the record is clear my objection is that my humble opinion is that the plaintiff should have to prove that they are going to prevail and they should actually have to prevail before the real details of the attorney's fees go to the jury. We have already let Mr. Tunnacliffe identify the exhibit and Mr. Kuhn testified that the $200.00 an hour was reasonable and we agreed with that. So I think that preserves their evidence, so to speak. But I fear that there may be some prejudice in that the issue of the attorney's fees should be kept from them or bifurcated into a later proceeding. And I think that covers the gist of my objection.

Barrett's attorney added, ". . . we have no objection to a very brief summary presentation. But as far as getting into detail and trying to suggest this, that and the other is reasonable then I follow and endorse with [Carr's attorney]." Carr's attorney clarified, "I'm going to object steadfastly to the end of this case that the grand total and the hours they did and the things that they did were not reasonable, not the hourly rate." The trial court assured Carr's attorney that his objection to the reasonableness was preserved, "And I'm not asking you to waive that argument at all." The trial court ruled, "The Court is going to overrule the objection, and the Court will note the objection of [Carr's attorney]. And it will be permitted if so desired that Mr. Tunnacliffe can declare the amount that has been billed for legal fees through the 23rd recognizing it. And then closing there will be some other calculations as to those additional fees incurred during the trial of this week. And I'll note the objections of [Carr's attorney] to the Court's ruling." The trial court's ruling both by journal entry and from the bench at trial was that attorney's fees

were part of Tunnacliffe's damages and would be presented to the jury. The trial court further acknowledged that Carr and Barrett would be permitted to challenge the reasonableness of the attorney fees.

{¶47} Following the trial court's ruling, Tunnacliffe presented evidence of the total amount of attorney's fees he incurred. The only evidence of reasonableness of the fees was the parties' stipulation that $200 per hour was a reasonable attorney fee rate. Tunnacliffe argues that the evidence he submitted at trial "clearly and completely supported an award of attorney fees and costs in the amount of $58,200." The two attorney fee invoices Tunnacliffe submitted into evidence identified the time spent and a description of the tasks performed. However, Tunnacliffe did not present any evidence of the reasonableness of the time spent or the tasks performed. And, although Carr and Barrett clearly preserved their right to do so, they did not offer evidence challenging the reasonableness of the fees, the time entries in the bills, or the description of the work performed. The trial court gave jury instructions that instructed the jury as follows:

> If you have decided that one or more of the defendants are in violation of the restrictive covenants you must also decide whether one or more of the defendants are liable for the reasonable attorney fees of counsel employed by the plaintiffs and the prosecution of this action and the costs paid by the plaintiffs to enforce the covenants.

> Now reasonableness of attorney's fees. Generally in deciding what is [a] reasonable amount to award for attorney fees you may consider among other things the following. A) the time necessarily spent by the attorneys for the plaintiff. B) the fee is customarily charged in Adams County for similar legal services. C) the amount of money involved, the results of the services or both. D) the necessary expenses incurred by the attorneys in performing the services. Additionally, the amount of time necessarily spent on the service may

be the first factor that you consider, but is neither the only measure of reasonableness nor is it necessarily the most important one. You must take all the facts and circumstances in evidence in consideration in reaching your decision.

**{¶48}** Carr's attorney objected to the inclusion of these instructions because he maintained his argument that these damages should be bifurcated from the liability portion of trial and decided by the trial court.

**{¶49}** On appeal, Carr argues that the award of attorney's fees should have been determined by the trial court, not the jury and that, regardless, Tunnacliffe failed to provide evidence of their reasonableness. However, the case she cites in support *does not require* attorney fees to be determined by the court. In that case, the parties agreed to have the trial court determine attorney fees: "As part of the settlement agreement, both sides agreed that the trial court would hear and determine the amount of the attorney-fee award." *Bittner v. Tri-Cnty. Toyota, Inc.*, 58 Ohio St.3d 143, 143 (1991).

**{¶50}** Instead, the issue of whether attorney's fees may be decided by a court or by a jury depends upon whether they are considered "damages" or "costs." *Stonehenge Land Co. v. Beazer Homes Investments, LLC*, 2008-Ohio-148, ¶ 48 (10th Dist.), citing *Christe v. GMS Mgt. Co., Inc.*, 88 Ohio St.3d 376, 378 (2000) (plaintiff Stonehenge's attorney's fees were allowable as a claim for damages under the parties' contract so they were properly submitted to the jury; defendant Beazer's attorney's fees were not awarded as part of a damages claim, but arose only after Beazer successfully defended itself against certain of Stonehenge's contract claims so Beazer's right to attorney's fees vested only after the jury entered a verdict against Stonehenge and Beazer should have been allowed to

present attorney's fees at a posttrial hearing). Unlike a contractually created right to attorney's fees, statutorily authorized attorney fees are considered "costs" and are awarded by the court. *Christe v. GMS Mgt. Co.,* 88 Ohio St.3d 376, 378 (2000) (analyzing a landlord-tenant statute and finding "we have repeatedly held that when a statute authorizes the awarding of attorney fees, it does so by allowing the fees to be taxed as costs rather than awarded as damages).

{¶51} In *Christe,* the Supreme Court of Ohio recognized that the difference between categorizing attorney's fees as "costs" or "damages" has procedural importance:

> In reaching our holding, we are mindful of the fact that the way in which we define R.C. 5321.16(C) attorney fees has procedural consequences. If the fees are damages, then the availability and amount of such fees have to be determined by the jury. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 557, 644 N.E.2d 397, 401. This could result in a cumbersome and awkward process. In calculating attorney fee awards, we require that a number of factors be considered, including, among other things, the time and labor involved in maintaining the litigation, the novelty and difficulty of the questions presented, the professional skill required to perform the necessary legal services, the reputation of the attorney, and the results obtained. *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 145–146, 569 N.E.2d 464, 467. While juries are likely to be unfamiliar with most of these considerations, courts are quite familiar with their application.

*Christe* at 378–79.

{¶52} In many cases the right to attorney's fees arises after the verdict. However, even in cases where attorney's fees are considered "damages" and part of the plaintiff's claim, there is no absolute requirement that they be tried to a jury. A party may waive the right to a jury trial. Civ.R. 38. Parties may also stipulate to have attorney's fees bifurcated and heard by the trial court. *Bittner, supra*. Finally,

"Ohio courts have held contractual jury-waivers, in which the parties agree not to ask for a jury trial, are enforceable where the terms of the waiver are clear and unambiguous." *MidAm Bank v. Dolin,* 2005-Ohio-3353, ¶ 123 (6th Dist.).

{¶53} Here Tunnacliffe's entitlement to attorney's fees arose from the Cowan Covenants and were part of his "damages." He could have, but did not, waive his right to have them tried to a jury. Nor did he stipulate to have them bifuracated and tried to the trial court. Tunnacliffe's situation is very closely analogous to Stonehenge's situation in *Stonehenge Land Co.*, 2008-Ohio-148. In *Stonehenge*, both parties were contractually entitled to recover a portion of their attorney's fees albeit for different reasons. Like Stonehenge, Tunnacliffe's attorney's fees were part of the damages allowed by contract to include, reasonable attorney's fees and other costs of litigation. The appellate court in *Stonehenge* found that the trial court did not err in submitting the attorney-fee issue to the jury rather than hold a separate posttrial hearing:

> Moreover, the trial court did not err in submitting the attorney-fee issue to the jury rather than holding a separate posttrial hearing on the matter. "Generally, attorney's fees are allowable as damages in breach of contract cases where the parties have bargained for a particular result and the breaching party's wrongful conduct led to the legal fees being incurred." *Natl. Eng. & Contracting Co. v. U.S. Fid. & Guar. Co.,* 2004-Ohio-2503, ¶ 23 (10th Dist.), citing *Westfield Cos. v. O.K.L. Can Line,* 2003-Ohio-7151 (1st Dist.). Because the attorney fees being sought herein were in the nature of damages, the trial court was required to submit the issue to the jury. "If the fees are damages, then the availability and amount of such fees have to be determined by the jury." *Christe,* 88 Ohio St.3d at 378, citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 557 (1994). Accordingly, the trial court correctly submitted the issue of Stonehenge's attorney fees to the jury, rather than holding a separate hearing on the issue. (Citations abridged.)

*Stonehenge* at ¶ 48.

**{¶54}** However, like Stonehenge, Tunnacliffe did not present evidence of the reasonableness of the attorney fees. In *Stonehenge*, the trial court granted Beazer's motion for JNOV as to the jury award of attorney fees because it found that Stonehenge had presented no evidence as to the reasonableness of those fees. *Id.* at ¶ 44. The appellate court outlined the factors considered in determining reasonableness of attorney fees:

> "In calculating attorney fee awards, we require that a number of factors be considered, including, among other things, the time and labor involved in maintaining the litigation, the novelty and difficulty of the questions presented, the professional skill required to perform the necessary legal services, the reputation of the attorney, and the results obtained." *Christe v. GMS Mgt. Co., Inc.*, 88 Ohio St.3d 376, 378 (2000), citing *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 145–146 (1991). The factual determination of reasonableness must also be predicated upon an analysis of the hourly rates charged multiplied by the hours actually and necessarily spent, along with the aforementioned considerations of difficulty and complexity of the case, the attorney's reputation, and the results obtained. *Bittner*. (Citations abridged.)

*Stonehenge* at ¶ 46.

**{¶55}** Stonehenge's owner had testified that, in his opinion, the fees were reasonable. However, he did not testify whether the hourly rates were typical for the market, what the hourly rate was that was charged to Stonehenge, which attorneys had worked on the case, or how much Stonehenge had been charged. He also did not personally review the attorney invoices. The appellate court agreed with the trial court and found, "This evidence is insufficient for the jury to determine the reasonableness of the attorney fees that Stonehenge seeks." *Id.* at ¶ 47.

**{¶56}** Similarly here, Tunnacliffe presented two attorney fee invoices and testified that these two sums ($33,050.00 for pretrial fees and $13,100.00 for four

of the five days of trial) were the amount he incurred in legal fees, plus an additional $1,500 and one final day of trial for which he had not yet been billed. The parties stipulated that $200 was a reasonable hourly attorney rate. However, neither he nor any other witness testified about any of the factors upon which a jury could decide the reasonableness of the fees. The jury's verdict in so far as it included the award of attorney's fees was not supported by sufficient evidence and was against the manifest weight of the evidence. The trial court should have granted Barrett's JNOV motion on the issue of attorney's fees.

{¶57} We overrule in part and sustain in part Carr's second assignment of error. We reject her argument that the attorney's fees had to be determined by the trial court. However, we sustain her argument that the trial court erred in allowing the jury to determine an award of attorney's fees in this instance where Tunnacliffe failed to submit evidence of the reasonableness of the attorney fees. We sustain Barrett's fourth assignment of error[6] to the extent it challenged the jury's attorney's fees award as lacking evidence of reasonableness, not because the award was excessive due to the influence of passion or prejudice under Civ.R. 59(A)(4). We sustain that portion of Carr's first assignment of error challenging the award of attorney fees as against the manifest weight of the evidence.

---

[6] Barrett raised objections to the attorney's fees in both her JNOV and her remittitur motions. On appeal, she contends that the trial court erred in denying both these motions, but raised her argument against the attorney fee award only under the fourth assignment of error challenging the denial of her remittitur motion. Her third assignment of error challenges the trial court's denial of her JNOV, but she does not make the attorney fee argument under that assignment of error. We find that the jury's award of attorney's fees was based on insufficient evidence and was against the manifest weight of the evidence. Our basis for setting it aside is not based on a finding that the award was "influenced by prejudice or passion," which is one of the grounds for a remittitur. Rather, it was unsupported by the evidence because Tunnacliffe failed to submit evidence of reasonableness of the attorney fees, which is the ground supporting a JNOV.

{¶58} The jury's total award of $58,200 should be reduced by the amount of attorney's fees awarded by the jury. Because Carr and Barrett did not challenge the award of expert and court reporter fees, $5,100.00 and $3,672.50 respectively, and did not challenge the trial court's subsequent award of attorney's fees following the injunctive hearing in November 2019 in the amount of $2,310.00, those sums shall not be set aside. *Brantley, Inc. v. Tornstrom,* 2024-Ohio-2908, ¶ 41 (8th Dist.) (a trial court can decide the reasonableness of the attorney fees without third-party expert testimony). Tunnacliffe's total award for the two violations should be $8,772.50 ($5,100.00 + 3,672.50), or $4,386.25 per violation. The trial court's award of attorney's fees following the injunctive hearing is not modified and shall stand as $2,310.00 (with 25% or $577.50 paid by Carr and 75% or $1,732.50 paid by Barrett). We remand the cause for the trial court to modify the jury's award from $58,200 to $8,772.50.

## C. Barrett's Restitution Claim

{¶59} For her second assignment of error, Barrett contends that the trial court erred as a matter of law by ordering that Barrett return the deed to the 10.832-acre lot back to Carr without requiring Carr to return the purchase price Barrett paid to Carr for the property. She argues that recission requires that the parties be put back in their original positions, but she is not being put back in the same position because she is not getting her money back.

{¶60} Barrett did not assert a claim against Carr in the underlying litigation for repayment of her purchase price. The release of liability signed by both Barrett and Carr stated that they understood the sale of the 10.832-acre lot violated the

restrictive covenant against the subdivision of property in less than 20-acre lots. Further, Barrett agreed to hold Carr harmless from any liability that resulted from this violation: "Buyers, further agree to hold harmless Sellers . . . from any liability thereon." Whether Barrett is entitled to a refund of her purchase price or whether the release of liability bars such claim was not raised in the trial court below and will not be reviewed for the first time on appeal. "It is well-settled that a party may not raise new issues or legal theories for the first time on appeal." *Matter of B.S.*, 2024-Ohio-5183, ¶ 74 (4th Dist.). For this reason, we overrule Barrett's second assignment of error.

### D. Barrett's JNOV Motion

**{¶61}** For her third assignment of error, Barrett contends that the trial court erred in denying her JNOV motion because the restrictive covenant against lots smaller than 20-acres was waived, the Cowan Covenants were not enforceable, and her mobile home does not violate the Cowan Covenants.

**{¶62}** As we discussed, a JNOV tests the sufficiency of the evidence. We review the evidence at trial and construe it most strongly in the non-movant's favor. "If the record contains any competent evidence, when construed most strongly in favor of the nonmoving party, upon which reasonable minds could reach different conclusions, the court must deny the motion." *Oyer v. Adler*, 2015-Ohio-1722, ¶ 13 (4th Dist.).

### 1. Waiver of Restrictive Covenants

{¶63} We previously addressed the waiver and abandonment argument when we analyzed and rejected that argument in Carr's first assignment of error. For the reasons set forth therein, we reject Barrett's waiver argument.

### 2.   The Enforceability of the Cowan Covenants

{¶64} Barrett argues that the Cowan Covenants are unenforceable because they do not satisfy the requirements of restrictive covenants. Specifically, she contends that the 20-acre lot size restriction was not part of a common plan. In her JNOV motion, she argued that the 2002 Judgment Entry destroyed any common plan. Barrett argued, "The 2002 judgment acknowledging non-conforming lots and manufactured homes on land that Plaintiffs allege is protected by the Cowan Covenants should have been sufficient evidence to dismiss the present lawsuit on summary judgment." She also argued that Tunnacliffe's deed had additional restrictions placed on it by PPP, which she characterized as inconsistent with the Cowan Covenants, therefore destroying any common plan.

{¶65}   "Restrictive covenants in deeds are generally enforceable, unless contrary to public policy, if the purpose is to establish a general scheme in a tract of property to make it more attractive for residential purposes." *Benner v. Hammond*, 109 Ohio App.3d 822, 827 (4th Dist. 1996). Barrett cited cases that arise in the context of homeowner associations (HOA) and subdivisions that included the language that the property must be part of a general "subdivision" plan for the covenants to be enforceable. *See Lipchak v. Chevington Woods Civic Assn., Inc.*, 2015-Ohio-263, ¶ 33. However, there is no requirement that the

property be part of an official "subdivision" or HOA before the restrictive covenants can be enforced:

> Where an owner of land has adopted a general building scheme or plan for the development of a tract of property, designed to make it more attractive for residential purposes by reason of certain restrictive agreements to be imposed upon each of the separate lots sold, embodying the same in each deed, such agreements will generally be upheld provided the same are not against public policy.
>
> In order that restrictive agreements in a deed may be declared void as against public policy, the same must violate some statute, or be contrary to judicial decision, or against public health, morals, safety, or welfare, or in some form be injurious to the public good.

*Dixon v. Van Sweringen Co.*, 121 Ohio St. 56 (1929), paragraph one and two of the syllabus.

{¶66} The Cowan Covenants were introduced as evidence at trial. In addition to the restrictions on lot size and mobile homes, the restrictions governed land use and building type, specified the type of exterior materials to be used, as well as established building requirements for outbuildings. The restrictions established a minimum livable floor area of 1,600 square feet for dwellings. The restrictions prohibited use of the property for commercial purposes or public entertainment and barred noxious or offensive use. Satellite dish antennas had to be screened. Property was not permitted to be used as a dumping ground and there were restrictions prohibiting waste disposal, signage, and the storage of junk vehicles or semi-trucks.

{¶67} Based on the terms and conditions of the Cowan Covenants, there was sufficient evidence for the jury to find that these restrictions were for the purpose of establishing a general scheme for the property to make it more

attractive for residential purposes. There is no evidence – and the parties did not contend there was any – of any restriction that was "contrary to public policy."

**{¶68}** Barrett also argues the presence of additional restrictions in Tunnacliffe's deed placed there by PPP were inconsistent with the Cowan Covenants and destroyed any common scheme. The PPP restrictions permitted certain mobile homes but also included prohibitions against noxious or offensive activity and nuisances, such as "unprocessed sewage," and appeared to establish a scheme to make the property more attractive for residential purposes. However, Carr and Barrett's property were not bound by the PPP restrictions and Tunnacliffe was not attempting to enforce the PPP restrictions against them. Moreover, the question of whether the PPP restrictions were enforceable was not a legal issue raised by the parties in the trial court. We will not address the question of enforceability of the PPP covenants for the first time on appeal. *Matter of B.S.*, 2024-Ohio-5183, ¶ 74 (4th Dist.).

### 3.  The Barrett Mobile Home

**{¶69}** Barrett contends that her mobile home does not violate any clear definitions contained in the Cowan Covenant. However, she did not raise this argument at trial. Instead, Barrett consistently testified that the mobile home was only supposed to be a temporary structure, not a permanent residence, and that the restrictive covenant barring mobile homes was unforceable because it was waived or abandoned. Finally, she failed to raise this argument in her JNOV motion so the trial court did not consider it.

{¶70} Regardless, we find there was sufficient evidence to support the jury's verdict that Barrett's mobile home violated the Cowan Covenants. The restriction states in plain, unambiguous language, "No modular or mobile homes or temporary structures of any kind, house trailer, camper, recreational vehicle, tent, or that such facility shall be erected, placed or permitted to remain on the property for use as a residence." The Barretts testified that the structure was either a modular home or a mobile home. Both modular homes and mobile homes are barred from the property. Donna Barrett testified that her home was a modular home, "Well, mine is a modular home." Both modular homes and mobile homes are barred from the property. Barrett's husband testified that it was a "mobile home."

> Q: But you went ahead and decided to put a mobile home on the property?
>
> A: Yes.

Carr testified that it was a mobile home. Moore testified that it was a mobile home. Tunnacliffe testified that it was a mobile home. And in their letter responding to Moore, the Barretts referred to it as a mobile home:

> We have carefully studied the covenant and find that Item 1 Paragraph 3 prohibits mobile homes for use as a residence. We will not be residing at the property in question. We will not be residing in Adams County for 2-3 years, this being after our farm in Clermont county is sold and the sale of our business is completed. We will then no longer need the mobile home and will remove it.

Whether the structure is called a modular home or a mobile home is irrelevant as both are prohibited by the Cowan Covenants. There was no evidence that the term

mobile home was confusing to the parties and their witnesses, and no evidence that it was ambiguous, or otherwise unenforceable.

{¶71} Barrett cites *Benner v. Hammond*, 109 Ohio App.3d 822 (4th Dist. 1996) as support for her contention that the term "mobile home" is capable of contradictory interpretations. However, that case is distinguishable. In *Benner,* the restrictive covenant prohibited "structures of a temporary character, trailer, . . . ." The question was whether the definition of a "trailer" included a mobile home. Here, there is no dispute that, whether it is called a modular home or a mobile home, Barrett's structure is prohibited by the Cowan Covenants.

{¶72} We find that there was competent evidence, when construed most strongly in favor of the nonmoving party, upon which the jury could find that Barrett violated the restriction on modular and mobile homes when she installed the 14x70 1986 Fleetwood single-wide mobile home on it.

{¶73} We overrule Barrett's third assignment of error.

D. The Injunctive Relief and the Monetary Judgment

{¶74} In the second half of her first assignment of error challenging the jury's verdict under the manifest weight of the evidence standard, Carr contends that the injunctive award the trial court granted to Tunnacliffe – the return of the Barrett 10.832-acre lot back to Carr without Carr having to pay anything for it – fails to give Tunnacliffe the results he sought. Carr contends that, upon the parties' compliance with the judgment entry, she will own a 20-acre lot and a 10.832-acre lot, which she contends means the Carr property still violates the Cowan Covenants as it consists of two parcels, one which is less than 20 acres.

**{¶75}** Carr also contends that the monetary amount of the jury award will mean that the entire financial burden will be borne by her because any judgment liens placed on the Barrett 10.832-acre lot will revert to Carr when the property is transferred to Carr. She argues, "The Trial Court's Decision erroneously placed the entire Judgment Lien in excess of $59,000 on Appellant Carr."

**{¶76}** We can dispose of Carr's first argument summarily because the trial court, not the jury, ordered the Barrett property to be returned to Carr. Therefore, the legal framework for this assignment of error – that the jury's verdict was against the manifest weight of the evidence – is not supported by the argument. Second, Carr has no standing to raise purported errors in the judgment award that are in her favor and that disfavor Tunnacliffe. "Generally, an appellant does not have standing to argue issues affecting another person." *Benjamin v. Ernst & Young, L.L.P.,* 2006-Ohio-2739, ¶ 4 (10th Dist.); *Dayton Lodge, L.L.C. v. Hoffman,* 2013-Ohio-5755, ¶ 35 (2d Dist.). If Tunnacliffe believed there was a legal error in the injunctive relief, he could have filed a cross-appeal asserting that the trial court erred arguing that he was not awarded the full relief to which he was entitled. Tunnacliffe could have then asked us to amend the injunctive relief to order Carr to convert the two parcels (20-acres and 10.832-acres) back into the one 30.832-acare parcel Carr had before she divided the property and to order her to properly record it.

**{¶77}** Third, to the extent Carr is concerned that her property will still be in violation of the Cowan Covenants and subject her to possible future litigation, she is free to take steps to convert it back to a single 30.832-acre parcel. There is

nothing in the trial court's order that prevents her from consolidating her two parcels and acquiring peace of mind.

**{¶78}** As for Carr's argument about any liens that may be placed to collect the judgment, the jury did not order any liens placed on property in its verdict. The jury found her and Barrett jointly and severally liable for violating the lot size restriction and awarded a judgment against them in favor of Tunnacliffe in the amount of $29,100 (which we ordered reduced to $4,386.25). It found Barrett solely liable for violating the mobile home restriction and awarded a judgment against her of $29,100 (now $4,386.25). The trial court's order likewise did not order a judgment lien be placed on any property as part of its judgment entry. Thus, as with her argument about the injunctive award, this judgment lien argument does not support the assignment of error. We reject it on this legal ground.

**{¶79}** Carr cites no place in the record where either the jury or the trial court ordered a judgment lien to be placed on property. Carr appears to be anticipating future Tunnacliffe collection activities, which have been stayed pending this appeal. Any claim that she has that may arise from Tunnacliffe's future collection activities is not ripe for review by this court. "In order to be justiciable, a controversy must be ripe for review." *Keller v. Columbus*, 2003-Ohio-5599, ¶ 26. A claim is not ripe for our consideration if it rests on contingent future events that may not occur as anticipated or may never occur at all. *State v. Loving,* 2009-Ohio-15, ¶ 4-5 (10th Dist.) (appellant's claim that he might face future penalties if he failed to pay the entire judgment was not ripe for review), citing *Texas v. United States,* 523 U.S. 296, 300 (1998).

**{¶80}** Carr's first assignment of error made four arguments. We addressed the first two arguments in subpart A (waiver and abandonment) and subpart B (attorney's fees). We rejected Carr's waiver and abandonment argument and her attorney's fees argument made under her first assignment of error (that Tunnacliffe was not entitled to damages because he had no objection to small lots). In this section, Subpart D, we reject her remaining two arguments raised in the first assignment of error. Thus, we overrule Carr's first assignment of error. We overruled in part and sustained in part her second assignment of error related to attorney's fees in subpart B. We overruled it in part because attorney's fees that are categorized as "damages" are required to be heard by a jury, not the trial court (unless the plaintiff stipulates otherwise). However, we sustained it on the grounds that the award of attorney's fees was against the manifest weight of the evidence. In subparts E and F we address Carr's third and fourth assignments of error.

E. Were Questions of Law Decided by the Jury?

**{¶81}** For her third assignment of error, Carr contends that the jury improperly determined questions of law because (1) the construction of the deed restrictions is a question of law; (2) the other neighbors who were in violation of the Cowan Covenants were not joined in the litigation; and (3) the character of the neighborhood had changed.

**{¶82}** The construction of written contracts and instruments, including deeds, is a matter of law. *DeRosa v. Parker*, 2011-Ohio-6024, ¶ 8 (7th Dist.) However, in this case, the language in the Cowan Covenants was not contested by the parties. There was no claim that the terms were ambiguous or subject to

multiple, conflicting interpretations. The jury was not asked to construe the terms of the Cowan Covenants. The jury was asked to apply the terms as written to the facts before them to determine whether Carr and Barrett had violated the terms by selling and buying a lot under 20-acres in size and by installing a mobile home on it. The jury found the Cowan Covenants enforceable, thereby rejecting the laches, waiver, and abandonment defenses when the jury found that Carr and Barrett had violated the covenants. We find no merit to this first argument

**{¶83}** Next, Carr argues that there were seven nonconforming lots and those owners should have been joined in the lawsuit. However, the jury was not asked to rule on joinder issues. Moreover, Carr did not raise a failure to join an indispensable party defense in her answer or elsewhere during the underlying proceedings and therefore she waived it.

> Under Civ.R. 12(B)(7), a defendant may move the court to dismiss an action for failure to join a party under Civ.R. 19 or Civ.R. 19.1. This defense may also be made in any pleading permitted or ordered under Civ.R. 7(A), by motion for judgment on the pleadings, or at trial on the merits. See Civ.R. 12(H). However, merely raising the defense in an answer "without further affirmative action to prosecute the raised defense results in a waiver of said defense." (Citations omitted.)

*Nationwide Mut. Fire Ins. Co. v. Logan*, 2006-Ohio-2512, ¶ 24 (12th Dist.). Thus, we find no merit to this argument.

**{¶84}** Last, Carr argues that the jury erred when it found that the character of the neighborhood had not changed. She argues that the "undisputed evidence showed that the character of the neighborhood had changed." The question of whether the neighborhood has changed is not a question of law. It was a factual question appropriate for the jury's determination. Therefore, this argument does

not fall within the framework of the third assignment of error. Moreover, Carr made no objection to this jury instruction and has waived any purported errors it may contain. Finally, the photographs of the neighborhood and relevant properties were presented as evidence and the jury was taken on a jury view of the neighborhood during the trial so that they could view the area for themselves. Thus, we find that there was sufficient evidence to support the jury's finding that enforcement of the Cowan Covenants would restore the neighborhood to its former character before the Carr-Barrett violations occurred. We find no merit to this third argument.

{¶85} We overrule Carr's third assignment of error.

### F. Evidentiary Ruling on Hardship

{¶86} For her fourth and final assignment of error, Carr contends that the trial court erred by barring evidence of hardship. She argues that the jury was required to consider whether enforcement of the Cowan Covenants would result in a great hardship on her with minimal benefits to Tunnacliffe. She claims that she will be left with a parcel she cannot sell with a lien on it for $29,000 plus attorney fees.

{¶87} Here, Tunnacliffe filed a motion in limine to prevent evidence or references to Tunnacliffe's, Carr's, or Barrett's income and available funds, which the trial court granted. During the trial, Carr did not attempt to testify about any hardship that would be created by the enforcement of the Cowan Covenants and there were no objections made concerning hardship during Carr's testimony. The two places in the record Carr cites to in support of her argument that her hardship testimony was barred do not involve her testimony. The first involved the cross-

examination question of Tunnacliffe about what he wanted to see happen to Barrett, "So the rules command you seek to put Miss Barrett out of her house, off her property, away from her horses?" The second involved a question of Barrett as to the impact upon her if she has to give up her home and property:

> Q: If you have to give up your home and your property what is the impact on you, if any?

> A: I don't know what I would do, I don't have no place to go or no place to take the animals.

An objection to this response was sustained and the jury was instructed to disregard it.

{¶88} We reject Carr's argument. First, once again Carr anticipates problems she may or may not have in the future concerning possible liens. Second, we must speculate about Carr's hardship testimony because the trial court granted a motion in limine about her financial situation and, to the extent her financial situation was part of her hardship evidence, she did not proffer the testimony to preserve it for review on appeal.

> It is incumbent upon a party who has been temporarily restricted from introducing evidence because of a motion in limine to seek the introduction of that evidence by proffer or otherwise at trial to enable the trial court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. *Garrett v. Sandusky*, 68 Ohio St.3d 139, 141 (1994). Failing to preserve the claimed error by objection or proffer negates an appellate court's duty to review the issue. *Barker v. Glen Meadows Nursing Home*, 2009–Ohio–2626 (12th Dist.)

*Clarkwestern Dietrich Bldg. Systems, LLC v. Certified Steel Stud Assn., Inc.*, 2017-Ohio-2713, ¶ 30-31 (12th Dist.). Therefore, we find that Carr waived any error in the trial court's decision to bar her evidence of hardship because (1) she cites no

place in the record where she attempted to give hardship testimony and (2) she did not preserve any hardship testimony related to her financial situation because she failed to tender or proffer it for review on appeal.

**{¶89}** As part of this assignment of error Carr raises purported evidentiary errors that affected another party, Barrett. Carr argues Barrett was prevented from introducing evidence of the hardship she would suffer from the enforcement of the Cowan Covenants. As we stated previously, "an appellant does not have standing to argue issues affecting another person." *Benjamin v. Ernst & Young, L.L.P.,* 2006-Ohio-2739, ¶ 4 (10th Dist.); *Dayton Lodge, L.L.C. v. Hoffman,* 2013-Ohio-5755, ¶ 35 (2d Dist.). Moreover, Barrett did not raise this issue on appeal and has waived it.

**{¶90}** We overrule Carr's fourth assignment of error.

IV. CONCLUSION

**{¶91}** We overrule Barrett's first, second, and third assignments of error and sustain her fourth assignment of error, in part, to the extent it asserts that the jury attorney's fees award was not supported by sufficient evidence. We overrule Carr's first, third, and fourth assignments of error and sustain her second assignment of error to the extent it claimed that the jury's attorney's fees award was against the manifest weight of the evidence.

**{¶92}** We remand the cause to the trial court for the limited purpose of modifying the judgment entry to reduce the jury verdict against Carr and Barrett for violation of the 20-acre lot restriction from the sum of $29,100 down to the sum of

$4,386.25 and the jury verdict against Barrett for violation of the mobile home restriction from the sum of $29,100 down to the sum of $4,386.25.

**JUDGMENT MODIFIED IN PART AND
CAUSE REMANDED.**

Smith, P.J.: Dissents with dissenting opinion.

**{¶93}** I respectfully dissent from the principal opinion.  In my view, the doctrine of laches applies to bar the complaint that Mr. Tunnacliffe filed against Mrs. Carr and Mrs. Barrett on June 9, 2016.  The concept of laches, the negligent delay in presenting a matter to court, is often a basis for dismissal of a cause of action.  *See State ex rel. Gadell-Newton v. Huston,* 2018-Ohio-1854, at ¶ 19. (O'Donnell, J., dissenting.)  Both Carr and Barrett asserted the affirmative defense of laches in their answers and during motion practice.  The evidence demonstrated that Mr. Tunnacliffe was aware of the violations of the Cowan restrictive covenants as early as 2010 or 2011.  While it is admirable that he attempted to resolve the issues without resort to formal litigation, I believe it was incumbent on him, especially with the drastic relief he requested the court to grant—removal of the mobile home and recission of the undersized lot to the original owner—to have filed a formal complaint much sooner than June 2016.  Under the facts presented herein, I find the delay in filing to be unreasonable.  I also find the result to be unjust.

**{¶94}** While I recognize that delay in asserting a right does not of itself constitute laches, the length of the delay is nevertheless one of the factors in determining whether laches should apply.  *See Estate of Pavelzik v. Pavelzik,*

2010-Ohio-5318, at ¶ 19 (5th Dist.). Furthermore, laches is principally a question of the inequity of allowing the case to proceed. *See Brown v. Ohio Bur. of Emp. Serv.,* 114 Ohio App. 3d 85, 91 (3d Dist.1996), citing *Russell v. Fourth Natl. Bank,* 102 Ohio St. 248 (1921).

{¶95} In *Strong v. Strong,* 2006-Ohio-558 (5th Dist.), the appellant raised the issue of laches, claiming that his wife failed to assert her rights for a large child support arrearage for an unreasonable and unexplained length of time. The appellate court declined to address the argument due to appellant's failure to raise it in the trial court. However, Judge Gwin dissented to the result, in part, because "just as importantly, I find the result reached by the majority to be grossly unjust." *Id.* at ¶ 25. The same is true herein.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE MODIFIED IN PART AND CAUSE REMANDED. Costs to be paid by appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Wilkin, J.: Concurs in Judgment and Opinion.
Smith, P.J.: Dissents with Dissenting Opinion.


For the Court,


_____
Michael D. Hess
Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**